# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                         )    Chapter 11
                               )
THE FLINTKOTE COMPANY and      )    Case No. 04-11300 (MFW)
FLINTKOTE MINES LIMITED,        )    (Jointly Administered)
                               )
             Debtors.         )
                               )
                               )
_____ )

**(1) FINDINGS OF FACT, (2) CONCLUSIONS OF LAW, (3) ORDER AND NOTICE OF CERTAIN BAR DATES, AND (4) ORDER REGARDING CONFIRMATION OF THE AMENDED JOINT PLAN OF REORGANIZATION IN RESPECT OF THE FLINTKOTE COMPANY AND FLINTKOTE MINES LIMITED (AS MODIFIED February 9, 2015)**

# Contents

A.     Confirmation ...................................................................................5

B.     Jurisdiction and Venue...................................................................6

C.     Judicial Notice ...............................................................................6

D.     Burden of Proof..............................................................................6

E.     Conditions to Confirmation and Consummation of the Plan .........7

F.     Effects of Confirmation ...............................................................10

G.     Solicitation and Notice.................................................................10

H.     Voting and Deemed Acceptance of the Plan................................12

I.     Approval of the ITCAN Settlement Agreement...........................14

     1.     The Releases And Supplemental Settlement Bar Order Contemplated By The ITCAN Settlement Agreement, And Contained In The Plan, Are Valid And Appropriate. .................................................................15

     2.     The ITCAN Settlement Agreement Is Within The Range of Reasonableness18

J.     Compliance with Section 1129 .....................................................21

     1.     Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code..........................................................21

     2.     Sections 1122 and 1123(a)(1)-(4) – Classification and Treatment of Claims and Interests .........................................................................21

     3.     Section 1123(a)(5) – Adequate Means for Implementation of the Plan ..........23

     4.     Section 1123(a)(6) – Prohibition Against the Issuance of Nonvoting Equity Securities and Adequate Provisions for Voting Power of Classes of Securities24

     5.     Section 1123(a)(7) – Selection of Directors and Officers in a Manner Consistent with the Interests of Creditors and Equity Security Holders and Public Policy ...................................................................25

     6.     Section 1123(b)(1) – Impairment of Claims and Interests ...............................26

     7.     Section 1123(b)(2) – Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases ................................................26

8.      Section 1123(b)(3) – Retention, Enforcement and Settlement of Claims Held by the Debtors ................................................................................................27

        i.      ITCAN Settlement Agreement.................................................................27

        ii.     Other Terms ...........................................................................................28

9.      Section 1123(b)(5) – Modification of the Rights of Holders of Claims and Equity Interests ................................................................................................29

10.     Section 1123(b)(6) – Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code....................................................................29

11.     Section 1123(d) – Cure of Defaults..................................................................30

12.     Section 1129(a)(2) – Compliance with Applicable Provisions of the Bankruptcy Code ..............................................................................................30

13.     Section 1129(a)(3) – Proposal of the Plan in Good Faith ..................................30

14.     Section 1129(a)(4) – Court Approval of Certain Payments as Reasonable ....32

15.     Section 1129(a)(5) – Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.......................................................33

16.     Section 1129(a)(6) – Approval of Rate Changes................................................34

17.     Section 1129(a)(7) – Best Interests of Holders of Claims and Interests ..........34

18.     Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Class............34

19.     Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code .............................................................35

20.     Section 1129(a)(10) – Acceptance By at Least One Impaired, Non-Insider Class ................................................................................................................36

21.     Section 1129(a)(11) – Feasibility of Plan..........................................................36

22.     Section 1129(a)(12) – Payment of Statutory Bankruptcy Fees ........................37

23.     Section 1129(a)(13)  – Retiree Benefits and Domestic Support Obligations ..37

24.     Section 1129(b) – Confirmation of Plan Over Nonacceptance of an Impaired Class ................................................................................................................37

25.     Section 1129(c) – Only One Plan Confirmed....................................................38

DOCS_DE:200917.1 28451/001

26. Section 1129(d) – Principal Purpose of Plan .................................................... 38

K. Compliance with Section 524(g) ................................................................. 39

1. Section 524(g)(2)(B)(i)(I) – Assumption of Liabilities by Trust ..................... 40

2. Section 524(g)(2)(B)(i)(II)-(III) – Funding of Trust; Transfer of Voting Shares .................................................................................................. 40

3. Section 524(g)(2)(B)(i)(IV) – Use of Trust Assets ........................................ 41

4. Section 524(g)(2)(B)(ii)(I) – Likelihood of Future Demands ........................... 41

5. Section 524(g)(2)(B)(ii)(II) – Indeterminate Nature of Future Demands ....... 42

6. Section 524(g)(2)(B)(ii)(III) – Threat of Future Demands Pursued Outside Plan .................................................................................................... 42

7. Section 524(g)(2)(B)(ii)(IV)(aa) – Description of Injunctions in Plan and Disclosure Statement ........................................................................... 42

8. Section 524(g)(2)(B)(iii)(IV)(bb) – Acceptance of Plan by Classes Addressed by Trust ............................................................................................... 43

9. Section 524(g)(2)(B)(ii)(V) – Operation of Trust ........................................... 43

10. Section 524(g)(4)(A)(ii) – Identity of Protected Third Parties ....................... 44

11. Section 524(g)(4)(B)(i) – Appointment of Legal Representative ..................... 45

12. Section 524(g)(4)(B)(ii) – Injunctions Are Fair and Equitable ...................... 46

13. Section 524(g)(3)(A) – District Court Approval ............................................. 48

L. Assumption and Rejection of Executory Contracts ....................................... 48

M. Claims Bar Dates and Other Claims Matters ............................................... 49

1. Bar Date for Fee Claims .............................................................................. 49

2. Bar Date for Rejection Damages Claims ...................................................... 50

N. Actions in Furtherance of the Plan .............................................................. 51

1. Directors and Officers of Reorganized Flintkote ........................................... 52

2. Merger ....................................................................................................... 52

O. Creation of Trust ........................................................................................ 53

DOCS_DE:200917.1 28451/001

1. Transfers of Certain Property to and Assumption of Certain Liabilities by the Trust..................................................................................................54

    i. Funding of the Trust..................................................................54

    ii. Transfer of Claims and Demands to the Trust ......................................54

    iii. Assignment and Enforcement of Trust Causes of Action ....................55

    iv. Transfer and Assignment of the Asbestos Insurance Action Recoveries, Asbestos Insurance Actions, and Asbestos In-Place Coverage ......................................................................................55

2. Institution and Maintenance of Legal and Other Proceedings........................56

3. Appointment of Trustees...............................................................................56

4. Appointment of TAC Members.....................................................................56

5. Asbestos Claimants Committee and Future Claimants Representative.........57

6. Indemnity Obligations of the Trust...............................................................58

P. Release, Exculpation and Indemnification Provisions ..................................58

1. Releases by the Debtors and Estates ..............................................................59

2. Releases by Holders of Claims ......................................................................60

3. Exculpation..................................................................................................60

Q. Discharge and Injunctions and Related Matters ..........................................61

1. Discharge of Claims .....................................................................................61

    i. Discharge of Claims Against the Debtors ............................................61

    ii. Disallowed Claims and Disallowed Equity Interests ...........................62

2. No Successor Liability .................................................................................62

3. Discharge Injunction ...................................................................................63

4. Third Party Injunction .................................................................................64

5. Insurance Entity Injunction..........................................................................71

6. Supplemental Settlement Bar Order..............................................................73

iv

       7.     **Terms of Certain Injunctions and Automatic Stay** ........................................74

          i.     **Injunctions and/or Automatic Stays in Existence Immediately Prior to Confirmation** ........................................74

          ii.    **Injunctions Provided for in the Plan** ........................................75

**R.**    **Miscellaneous** ........................................75

       1.     **Exemptions from Taxation** ........................................75

       2.     **Exemptions from Securities Law** ........................................75

       3.     **Distribution Record Date** ........................................76

       4.     **Delivery of Documents** ........................................76

       5.     **Issuance of New Instruments** ........................................77

       6.     **Modifications** ........................................77

**S.**    **Objections to Confirmation** ........................................77

       1.     **Resolution of Certain Prior Objections to Confirmation** ........................................77

          i.     **London Market Insurance Companies** ........................................78

          ii.    **Century Indemnity Company** ........................................79

          iii.   **Liberty Mutual Insurance Company** ........................................80

          iv.    **OIC Run-Off Limited** ........................................80

          v.     **Mt. McKinley** ........................................80

       2.     **Overruling of Objections to Confirmation** ........................................81

**T.**    **Retention of Jurisdiction by the Bankruptcy Court** ........................................81

**U.**    **Notice of Effective Date** ........................................81

**V.**    **Canadian Order** ........................................82

**W.**    **Recordation** ........................................82

**X.**    **Report and Recommendation to District Court** ........................................83

**WHEREAS,** on their respective Petition Dates,[1] the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and continue to manage their assets and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS,** on May 19, 2004, the Office of the United States Trustee appointed the Asbestos Claimants Committee in Flintkote's Chapter 11 Case (D.I. 54);

**WHEREAS,** on August 26, 2004, the Bankruptcy Court entered an order appointing Mr. James J. McMonagle as the Future Claimants Representative in the Flintkote Chapter 11 Case (D.I. 199), which order was subsequently made applicable to the Mines Chapter 11 Case by order entered September 9, 2004 (D.I. 238), and was further amended on November 16, 2006 to clarify the effective date of the Future Claimants Representative's appointment (D.I. 1946);

**WHEREAS,** on September 9, 2004, the Bankruptcy Court entered an Order directing the procedural consolidation and joint administration of these Chapter 11 Cases (D.I. 238);

**WHEREAS,** on November 16, 2011, the Debtors filed the Amended Joint Plan of Reorganization in Respect of The Flintkote Company and Flintkote Mines Limited (As Modified November 16, 2011) (D.I. 6336) (the "Prior Plan");

**WHEREAS,** on December 21, 2012, the Bankruptcy Court confirmed the Prior Plan and entered the Memorandum Opinion Overruling Objections to the Amended Joint Plan of Reorganization, Confirming Plan and Recommending the Affirmation of Confirmation and of the § 524(g) Injunction (D.I. 7253) (the "Prior Confirmation Opinion") and (1) Findings of Fact,

---

[1] Capitalized terms and phrases used but not otherwise defined herein have the meanings given to them in the Amended Joint Plan of Reorganization in Respect of The Flintkote Company and Flintkote Mines Limited (As Modified February 9, 2015) (D.I. 8706) (the "Plan") or, if not defined in the Plan, in the Plan Proponents' Brief in Support of Confirmation of the Plan (D.I. 8954) (the "Confirmation Brief"). The rules of interpretation set forth in Section 1.2 of the Plan apply to this Order (the "Confirmation Order").

(2) Conclusions of Law, (3) Order and Notice of Certain Bar Dates, and (4) Order Regarding Confirmation of the Amended Joint Plan of Reorganization in Respect of The Flintkote Company and Flintkote Mines Limited (As Modified November 16, 2011) (D.I. 7254) (the "Prior Confirmation Order");

WHEREAS, on July 10, 2014, the District Court entered an opinion (*In re The Flintkote Company*, 13-cv-227, (D.I. 47) (D. Del. 2014) (the "Prior Affirmation Opinion")) and order affirming the Prior Confirmation Order (*Id.* (D.I. 48) (the "Prior Affirmation Order"));

WHEREAS, Imperial Tobacco Canada Limited f/k/a Imasco Limited (Canada) ("Imperial") appealed the Prior Affirmation Order to the United States Court of Appeals for the Third Circuit (the "Third Circuit"), which appeal remains pending, but stayed by stipulation of the parties;[2]

WHEREAS, on December 17, 2014, the Plan Proponents and Imperial entered into a comprehensive settlement (the "ITCAN Settlement Agreement"),[3] that will resolve all disputes and claims between the Debtors and their respective Estates and Imperial, including the litigation brought by Flintkote, the Asbestos Claimants Committee, and the Future Claimants Representative against Imperial in the Superior Court of California, San Francisco County (the "Dividend Recovery Litigation");

WHEREAS, on February 9, 2015, in accordance with the ITCAN Settlement Agreement, the Plan Proponents filed the Plan;

---

[2] In connection with that appeal, Imperial also appealed prior adverse rulings entered by the Bankruptcy Court, including orders denying Imperial's request to late-file an asbestos-related contribution and indemnification claim and disallowing an environmental claim Imperial was permitted to late-file.

[3] The ITCAN Settlement Agreement is attached as Exhibit D to the Plan.

**WHEREAS**, also on February 9, 2015, the Plan Proponents filed the Second Supplemental Disclosure Document Regarding the Amended Joint Plan of Reorganization in Respect of the Flintkote Company and Flintkote Mines Limited (As Modified February 9, 2015) (D.I. 8705) (the "Second Supplemental Disclosure Document");

**WHEREAS**, also on February 9, 2015, the Debtors filed the Motion for Order (I) Counting Previously Solicited Votes Pursuant to 11 U.S.C. § 1127(d); (II) Approving Form, Scope, and Procedures for Resolicitation of Votes on Modified Plan of Reorganization; (III) Approving Supplemental Disclosure Document; and (IV) Scheduling Confirmation Hearing and Deadlines in Respect Thereof (D.I. 8710) (the "Solicitation Procedures Motion");

**WHEREAS**, on March 17, 2015, the Bankruptcy Court entered the Order (I) Counting Previously Solicited Votes Pursuant to 11 U.S.C. § 1127(d); (II) Approving Form, Scope, and Procedures for Resolicitation of Votes on Modified Plan of Reorganization; (III) Approving Supplemental Disclosure Document; and (IV) Scheduling the Confirmation Hearing and Deadlines in Respect Thereof (D.I. 8768) (the "Solicitation Procedures Order");

**WHEREAS**, on March 27, 2015, Andrew E. Weissman of Garden City Group, LLC ("GCG") filed an affidavit of service detailing GCG's service of documents on behalf of the Plan Proponents in accordance with the Solicitation Procedures Order (D.I. 8785) (the "Weissman Affidavit");

**WHEREAS**, on June 16, 2015, Andrew L. Buck, on behalf of GCG, filed a declaration certifying the methodology for the tabulation of votes and results of voting with respect to the Plan (D.I. 8945) (the "Voting Declaration");

**WHEREAS**, on June 17, 2015, the Plan Proponents filed the Confirmation Brief;

**WHEREAS**, on June 17, 2015, the Plan Proponents also submitted declarations from David Gordon, President and CEO of the Flintkote Company and President of Mines (D.I. 8950) (the "Gordon Declaration"), James McMonagle (D.I. 8951) (the "McMonagle Declaration"), and Eric Thauvette, Vice President and Chief Financial Officer for Imperial (D.I. 8952) (the "Thauvette Declaration");

**WHEREAS**, on June 17, 2015, Lael D. Dowd of GCG submitted a declaration regarding implementation of the Constructive Notice Program (as defined in the Solicitation Procedures Motion), approved by the Solicitation Procedures Order (D.I. 8953) (the "Dowd Declaration"); and

**WHEREAS**, on July 22, 2015, the Debtors filed the Plan Proponents' Reply to Pro Se Litigant's Filing In Response To The Amended Joint Plan Of Reorganization In Respect Of The Flintkote Company And Flintkote Mines Limited (As Modified February 9, 2015) (D.I. 9016) (the "Confirmation Reply");

**NOW, THEREFORE**, based upon the Bankruptcy Court's review of the Plan, the Second Supplemental Disclosure Document and the Solicitation Procedures Order, and upon (i) all of the evidence proffered (including the Weissman Affidavit, the Voting Declaration, the Gordon Declaration, the McMonagle Declaration, the Thauvette Declaration, and the Dowd Declaration), or adduced, and arguments of counsel made at the Confirmation Hearing, and (ii) the record of these Chapter 11 Cases, including the Prior Confirmation Opinion, Prior Confirmation Order, Prior Affirmation Opinion, and Prior Affirmation Order; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby found and determined that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.    The findings and conclusions set forth herein constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**A.    Confirmation**

2.    The Plan, along with each of its provisions (whether or not specifically approved herein) and all operative exhibits and schedules thereto, including the exhibits and schedules attached to the Notice of Filing of Plan Supplement to Amended Joint Plan of Reorganization (As Modified) (D.I. 9024) (the "Plan Supplement") is CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan and the operative exhibits and schedules thereto are incorporated by reference into this Confirmation Order, and the provisions of the Plan and this Confirmation Order are non-severable and mutually dependent. Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. This Confirmation Order shall supersede any prior orders of the Bankruptcy Court issued in these Chapter 11 Cases that may be inconsistent herewith, but shall only supersede the Prior Confirmation Order on and after the Date the Affirmation Order becomes a Final Order. The terms of the Plan and the operative exhibits and schedules thereto shall be effective and binding as of the Effective Date.

5

**B.  Jurisdiction and Venue**

3.    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Each of the Debtors was and is qualified to be a debtor under section 109 of the Bankruptcy Code.  Venue of the Chapter 11 Cases in the United States District Court for the District of Delaware was proper as of the Petition Date, pursuant to 28 U.S.C. § 1408, and continues to be proper.  The Bankruptcy Court has jurisdiction to enter a final order with respect to confirmation of the Plan, except to the extent section 524(g) of the Bankruptcy Code requires issuance or affirmance of this Confirmation Order by the District Court.

**C.  Judicial Notice**

4.    This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, including the Prior Confirmation Order, the Prior Confirmation Opinion, the Prior Affirmation Order, the Prior Affirmation Opinion, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during these Chapter 11 Cases, including, without limitation, (i) the hearings to consider the adequacy of the Disclosure Statement, including the Second Supplemental Disclosure Document,[4] and (ii) each session of the Confirmation Hearing.

**D.  Burden of Proof**

5.    The Debtors, the Asbestos Claimants Committee, and the Future Claimants Representative, as Plan Proponents, have the burden of proving that the elements needed to satisfy (i) subsections 1129(a) and (b) and (ii) subsection 524(g) of the Bankruptcy Code have

---

[4] The definition of the term "Disclosure Statement" in the Plan includes later supplements thereto, including the Second Supplemental Disclosure Document.  Plan § 1.1.42.

been established by a preponderance of the evidence. In addition to the evidence submitted in connection with confirmation of the Prior Plan, the Plan Proponents submitted the proffered testimony of David Gordon, James J. McMonagle, Eric Thauvette, Lael D. Dowd, and Andrew L. Buck in support of confirmation of the Plan. The Bankruptcy Court finds that the testimony in these individuals' supporting declarations is credible and supports confirmation of the Plan. The Bankruptcy Court has also considered the findings and conclusions made in the Prior Confirmation Opinion and Prior Confirmation Order and concludes that the Plan Proponents have met their burden as found and determined herein.

**E.      Conditions to Confirmation and Consummation of the Plan**

6.      The Bankruptcy Court has considered the findings set forth in ¶ 3 of the Prior Confirmation Order and the record in these Chapter 11 Cases and finds that each of the conditions to confirmation of the Plan, as set forth in Section 9.1 of the Plan and reproduced verbatim below, has been satisfied or duly waived:

- <u>Injunctions</u>. The Third Party Injunction and the Insurance Entity Injunction are to be implemented in connection with the Trust.

- <u>Named Defendants</u>. As of the Petition Date, each of the Debtors had been named as defendants in personal injury, wrongful death or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

- <u>Assumption of Certain Liabilities</u>. Upon the Effective Date, the Trust shall assume the liabilities of the Debtors with respect to Asbestos Personal Injury Claims.

- <u>Funding of Trust</u>. The Trust will be funded in part by the New Flintkote Stock and all rights to receive dividends or other distributions on account of such stock.

- <u>Stock Ownership</u>. On the Effective Date, the Trust will own all of the voting shares of Reorganized Flintkote.

- <u>Use of Trust Assets</u>. The Trust will use its assets and income to pay Asbestos Personal Injury Claims.

- <u>Likelihood of Demands</u>. The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Personal Injury Claims, that are addressed by the Third Party Injunction and the Insurance Entity Injunction.

- <u>Demands Indeterminate</u>. The actual amounts, numbers and timing of future Demands cannot be determined.

- <u>Likelihood of Threat to Plan's Purpose</u>. Pursuit of Asbestos Personal Injury Claims, including Demands, outside of the procedures prescribed by the Plan and the Plan Documents, including the Trust Distribution Procedures, is likely to threaten the Plan's purpose to treat the Asbestos Personal Injury Claims and Demands equitably.

- <u>Injunctions Conspicuous</u>. The terms of the Discharge Injunction, Third Party Injunction, the Supplemental Settlement Bar Order, and the Insurance Entity Injunction, including any provisions barring actions against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement.

- <u>Appropriate Trust Mechanisms</u>. Pursuant to court orders or otherwise, the Trust shall operate through mechanisms such as structured, periodic or supplemental payments, pro rata distributions, matrices or periodic review of estimates of the numbers and values of Asbestos Personal Injury Claims or other comparable mechanisms, that provide reasonable assurance that the Trust will value, and be in a financial position to pay present Asbestos Personal Injury Claims and Demands that involve similar Claims in substantially the same manner regardless of the timing of the assertion of such present Asbestos Personal Injury Claims and Demands.

- <u>Future Claimants Representative</u>. The Future Claimants Representative was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Third Party Injunction and the Insurance Entity Injunction for the purpose of, among other things, protecting the rights of persons that might subsequently assert Demands of the kind that are addressed in the Third Party Injunction and the Insurance Entity Injunction, and transferred to and assumed by the Trust.

- <u>Fair and Equitable Inclusion</u>. The inclusion of each Debtor or other Protected Party within the protection afforded by the Third Party Injunction and the Insurance Entity Injunction, as applicable, is fair and equitable with respect to the Persons that might subsequently assert Demands against each such Debtor or other Protected Party in light of the benefits provided, or to be provided, to the Trust by or on behalf of each such Debtor or other Protected Party.

- <u>Section 524(g) Compliance</u>. The Plan complies with section 524(g) of the Bankruptcy Code in all respects.

- Injunctions Essential. The Third Party Injunction, Supplemental Settlement Bar Order, and the Insurance Entity Injunction are essential to the Plan and the Debtors' reorganization efforts.

- Assignment Authorized. The Bankruptcy Code authorizes the Assignment by preempting any terms of the Asbestos Insurance Policies or provisions of applicable non-bankruptcy law that otherwise might prohibit the Assignment.

- Approval of ITCAN Settlement Agreement. The Debtors' entry into the ITCAN Settlement Agreement is authorized, and the ITCAN Settlement Agreement is approved in accordance with its terms under section 1123(b)(3)(A) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019.

- Binding Nature of Plan and ITCAN Settlement Agreement. The ITCAN Settlement Agreement shall be binding on the Debtors' successors and assigns, including the Trust.

- The Supplemental Settlement Bar Order. The Supplemental Settlement Bar Order is to be implemented in connection with the ITCAN Settlement Agreement.

- Mines' Ancillary Proceeding in Canada. The Bankruptcy Court respectfully requests that the Canadian Court enter an Order within Mines' proceedings (Court File Number 500-11-0243610046) and pursuant to §18.6 of the Companies' Creditors Arrangement Act recognizing this Confirmation Order in its entirety and ordering this Confirmation Order and the Modified Plan to be implemented and effective in Canada in accordance with their terms.

7.      Nothing in this Confirmation Order shall in any way alter the provisions of Sections 9.2 and 9.3 of the Plan, which include provisions regarding: (i) the conditions precedent to the Effective Date of the Plan, and (ii) the waiver of any such conditions. Once all of the foregoing conditions and any other conditions to consummation of the ITCAN Settlement Agreement set forth in Section C.1 of the ITCAN Settlement Agreement have been satisfied or waived, and the Escrow Agent releases the Escrow Funds as set forth in Section B.4 of the ITCAN Settlement Agreement, the Effective Date shall occur and the Plan shall be deemed to be substantially consummated within the meaning of sections 1101 and 1127 of the Bankruptcy Code. If a condition to the occurrence of the Effective Date set forth in Section 9.2 of the Plan cannot be satisfied, and the occurrence of such condition is not waived in writing by the Plan

Proponents, or Imperial as applicable, then the Plan and this Confirmation Order shall be deemed null and void.

**F.      Effects of Confirmation**

8.      In accordance with section 1141(a) of the Bankruptcy Code, subject to the occurrence of the Effective Date as provided in Section 9.2 of the Plan and ¶¶ E-F of this Confirmation Order, and notwithstanding any otherwise applicable non-bankruptcy law, immediately upon the entry of this Confirmation Order, the terms of the Plan and this Confirmation Order shall be binding upon each of the Debtors, Reorganized Flintkote, any entity acquiring property under the Plan, any and all holders of Claims, Demands, or Equity Interests (irrespective of whether Claims or Equity Interests are impaired under the Plan or whether the holders of Claims or Equity Interests accepted, rejected, or are deemed to have accepted or rejected the Plan), and any and all non-Debtor parties to executory contracts and unexpired leases with either of the Debtors, and any and all Entities who are parties to or are subject to the settlements, compromises, releases, waivers, discharges, and injunctions described herein, or in the Confirmation Brief, or in the Plan, and each of the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors, or assigns, if any, of any of the foregoing.  The Bankruptcy Court determines that there is no just cause for delay, and that this Confirmation Order shall take effect immediately upon entry, notwithstanding anything to the contrary in Bankruptcy Rules 3020(e) or 7062(a).

**G.      Solicitation and Notice**

9.      Through entry of the Solicitation Procedures Order, the Bankruptcy Court previously approved, among other things, (i) the Supplemental Voting Procedures (as defined in, and attached as Exhibit B to, the Solicitation Procedures Motion); (ii) the Ballots and Master Ballots (as defined in, and attached as Exhibit C to, the Solicitation Procedures Motion); (iii) the

10

Resolicitation Packages[5] (as defined in the Solicitation Procedures Motion); (iv) the direct

mailed notice of the Plan and Confirmation Hearing; (v) the Publication Notices (as defined in,

and attached as Exhibit E to, the Solicitation Procedures Motion); (vi) the Constructive Notice

Program (as defined in, and attached as Exhibit F to, the Solicitation Procedures Motion);

(vii) the proposed voting period, which ended on June 2, 2015; and determined that solicitation

of the Plan pursuant to the Solicitation Procedures Order complied with section 1127(b) of the

Bankruptcy Code.

10.     The Resolicitation Package and all related materials required by the Solicitation

Procedures Order were transmitted to, and served on, the parties listed in the Weissman

Affidavit.  Weismann Affidavit, ¶¶ 2-13.  In addition, GCG promptly complied with all requests

from interested parties for copies of documents contained in the Resolicitation Package.  (D.I.

8822, 8838, 8839, 8842, 8853, 8863, 8864, 8866, 8872, 8876, 8880, 8883, 8888, 8897, 8900,

8901, 8916, 8919, 8920, 8921, 8928, 8930, 8934, 8943, 8944, 8946, 8957, 8959, 8966, 8967,

8969, 8971, 8995, 8997, 9007, 9010, 9012).

11.     The Publication Notices, consisting of a general notice of the Confirmation

Hearing, and a version designed for asbestos claimants, were collectively published in 87 United

States and 41 Canadian publications, all in accordance with the Constructive Notice Program

previously approved by the Bankruptcy Court.  (Dowd Declaration, ¶ 6).  Among the national

magazines and newspapers publishing the Publication Notices were *Parade, People, Sports

Illustrated, Time, the Wall Street Journal,* and *the New York Times.*  Dowd Declaration, ¶¶ 7-8.

---

[5] The Resolicitation Packages consisted of (i) a notice of the Confirmation Hearing for the Plan,
attached as Exhibit D to the Solicitation Procedures Motion (the "Confirmation Hearing
Notice"); (ii) the Second Supplemental Disclosure Document; (iii) the Solicitation Procedures
Order; (iv) applicable Ballots and Master Ballots; and (v) a letter from the Asbestos Claimants
Committee in support of the Plan.  Solicitation Procedures Motion, ¶ 34.

The Publication Notices were also published in 31 local newspapers where Flintkote operated, 26 additional local newspapers in major cities in the United States, legal magazines, and Spanish-language newspapers. Dowd Declaration, ¶¶ 9-12. GCG also facilitated notice through banner ads, sponsored search listings, domestic press release, and third-party outreach to organizations with membership comprised of people who may have been exposed to asbestos in the course of their work. Dowd Declaration, ¶¶ 13-17. GCG took similar steps to provide notice in Canada. Dowd Declaration, ¶¶ 18-26.

12.    The Bankruptcy Court has considered ¶¶ 33-34 of the Prior Confirmation Order, pages 41-42 of the Prior Confirmation Opinion, the direct and constructive notice programs undertaken in connection with the Prior Plan, as well as the direct and Constructive Notice Program undertaken in connection with the Plan. The Bankruptcy Court finds that the foregoing notice programs are adequate and satisfy the requirements of due process with respect to all known and unknown creditors of the Debtors. Such notice was given in compliance with Bankruptcy Rules 2002, 3017, and 3020 and the Solicitation Procedures Order, and no other or further notice is or shall be required. All parties in interest had a full and fair opportunity to appear and be heard at the Confirmation Hearing.

**H.    Voting and Deemed Acceptance of the Plan**

13.    As more fully detailed in the Voting Declaration, all Classes eligible to vote on the Plan (the "Voting Classes") have either voted to accept the Plan or have been deemed to have accepted the Plan in accordance with the Supplemental Voting Procedures. Over 94% of the Class 7 Claimants and over 99% of the Class 8 Claimants voted in favor of the Plan, thereby amply satisfying the requirements of § 524(g)(2)(B)(ii)(IV)(bb). The Voting Classes voted as follows:

| Voting Class[6] | Votes Accepting (by number) | Votes Accepting (by amount) | Votes Rejecting (by number) | Votes Rejecting (by amount) |
|---|---|---|---|---|
| Class 5 (Flintkote Unsecured Creditors) | 6 / 100% | $3,882,080.23 / 100% | 0 / 0% | $0 / 0% |
| Class 6 (Mines Unsecured Creditors)[7] | 0 / N/A | $0 / N/A | 0 / N/A | $0 / N/A |
| Class 7 (Flintkote Asbestos Personal Injury Creditors) | 263,321 / 94.11% | $2,501,213,700 / 99.16% | 16,490 / 5.89% | $21,100,850 / 0.84% |
| Class 8 (Mines Asbestos Personal Injury Creditors) | 109,653 / 99.99% | $955,561,000 / 99.98% | 6 / 0.01% | $210,050 / 0.02% |
| Class 10 (Equity Interests in Mines) | 1 / 100% | $1 / 100% | 0 / 0% | $0 / 0% |

Voting Declaration, ¶ 38. The Voting Declaration, reflected, among other things, 279,811 votes by holders of Class 7 Claims (Flintkote Asbestos Personal Injury Claims) and 109,659 votes by holders of Class 8 Claims (Mines Asbestos Personal Injury Claims).

14.     As this Bankruptcy Court found and determined in the Solicitation Procedures Order, pursuant to section 1127(d) of the Bankruptcy Code, votes cast to accept or reject the Prior Plan by holders of Claims or Equity Interests in the Voting Classes are appropriately

---

[6] Classes 1-4 are unimpaired and non-voting. Class 9 is impaired, will receive nothing, and is deemed to reject. Solicitation Procedures Motion, ¶ 32.

[7] Class 6 did not contain any qualifying members, and thus no votes were cast in Class 6. Prior Confirmation Order, ¶ 16.

counted, and shall be counted for purposes of calculating acceptances and rejection of the Plan, except to the extent that a vote is changed by such holder in accordance with the Supplemental Voting Procedures. As described herein, the Debtors have satisfied sections 524(g)(2)(B)(ii)(IV)(bb), 1129(a)(8), and 1129(a)(10) of the Bankruptcy Code.

## I.    Approval of the ITCAN Settlement Agreement

15.    Pursuant to the ITCAN Settlement Agreement, Imperial paid into escrow $575 million in cash for a global resolution of, and release from, all Imperial Released Claims and injunctive relief from Third Party Claims and Derivative Estate Claims against it and the other Imperial Protected Parties. Because this global resolution motivates the specific terms of both the ITCAN Settlement Agreement and the modifications to the Prior Plan embodied in the Plan, consummation of the ITCAN Settlement Agreement—and disbursement of the escrowed ITCAN Settlement Funds—depends on confirmation of the Plan as proposed.

16.    Specifically, the Bankruptcy Court finds that Imperial would not have agreed to pay the $575 million in ITCAN Settlement Funds on behalf of the Imperial Protected Parties, forego additional challenges to confirmation of the Prior Plan, release its claims against the Debtors (for which the ITCAN Settlement Agreement provides, with the exception of certain indemnification claims arising from the provisions in the ITCAN Settlement Agreement), or dismiss its pending Third Circuit appeal of confirmation without receiving the benefit of the Third Party Injunction, the Estates' release of the Imperial Released Claims, and the Supplemental Settlement Bar Order contained in the Plan. Thauvette Declaration, ¶ 4.

DOCS_DE:200917.1 28451/001

1. **The Releases And Supplemental Settlement Bar Order Contemplated By The ITCAN Settlement Agreement, And Contained In The Plan, Are Valid And Appropriate.**

17.     Under sections 10.7.1 and 12.2.1(b) of the Plan, the Debtors and their Estates

settle, compromise, and release the Imperial Protected Parties from all Imperial Released Claims.

Plan §§ 10.7.1; 12.2.1(b).  Subject to a limited carve-out,[8] the Imperial Released Claims are

defined to include any claims the Estates "have, had, may have or may claim to have against any

of the Imperial Protected Parties[.]"  Plan § 12.2.1(b).

18.     The Supplemental Settlement Bar Order supplements and effectuates the release

of the Imperial Released Claims by permanently enjoining third parties from pursuing any

Imperial Released Claim and any Derivative Estate Claim against the Imperial Protected Parties.

Plan § 12.4.

19.     The release of the Imperial Released Claims and the Supplemental Settlement Bar

Order represent a valid exercise of the Debtors' authority to settle the Imperial Released Claims

and Derivative Estate Claims on behalf of themselves and their Estates, and to bind creditors to

the outcome of that settlement, particularly in light of the involvement of the Asbestos Claimants

Committee and the Future Claimants Representative in the Dividend Recovery Litigation and

their direct participation in the mediation and settlement negotiations that resulted in the ITCAN

Settlement Agreement.  McMonagle Declaration, ¶ 7.

20.     The Debtors have exclusive standing and authority to pursue claims and causes of

action of the Estates, including claims assertable on behalf of, or derivative of, the rights of the

---

[8] The Imperial Released Claims do not include (i) any continuing contractual duties or obligations that the Imperial Indemnitees might owe to Flintkote under the agreements through which such entities purchased assets formerly owned by Flintkote or other further contractual agreements related thereto; or (ii) any claims with respect to any breach of the ITCAN Settlement Agreement.  Plan § 12.2.1(b).

Debtors. *See, e.g., In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) ("[W]here a claim is 'a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the [debtor-in-possession] is the proper person to assert the claim, and the creditors are bound by the outcome of the [debtor-in-possession]'s action.'" (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989))), *cert. denied*, 135 S. Ct. 436 (2014); *In re Howrey LLP*, No. C 13-0449 SBA, 2014 WL 3899309, at *5 (N.D. Cal. Aug. 8, 2014) (holding that creditor was not entitled to pursue its state-law alter ego claim against former partners of debtor law firm during debtor's bankruptcy case because it was premised on alleged fraudulent transfers, which only trustee had standing to pursue); *In re O'Reilly & Collins*, Case No. 13-3177, 2014 WL 460767, at *6-10 (N.D. Cal. Feb. 3, 2014) (holding that creditor could not pursue alter ego claim where allegations relied in whole or in part on same facts and circumstances as fraudulent transfer claims exclusively vested in the trustee).

21.     Given the $575 million payment from Imperial, and the involvement and support of the Asbestos Claimants Committee and the Future Claimants Representative in the settlement negotiations, the release of the Imperial Released Claims and the Supplemental Settlement Bar Order contemplated by the ITCAN Settlement Agreement, and incorporated into the Plan, are also justified as "a valid exercise of the debtor's business judgment, are fair, and reasonable, and are in the best interest of the debtor and its estate." *In re Aleris Int'l, Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *20 (Bankr. D. Del. May 13, 2013); Gordon Declaration, ¶¶ 5-16; Thauvette Declaration, ¶ 4; McMonagle Declaration, ¶¶ 9-11.

16

22.     For the reasons set forth in more detail in the Confirmation Brief, the release of

the Imperial Released Claims and the Supplemental Settlement Bar Order also satisfy each of the

five *Master Mortgage* factors used as a guide to determine whether releases are appropriate.[9]

*See, e.g., In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (Walrath, J.) (citing *In re*

*Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)), appeal dismissed,

250 B.R. 207 (D. Del. 2000).

a.      Imperial, on behalf of itself and the other Imperial Protected Parties, has

made a substantial contribution of assets to the reorganization.  The $575 million in

ITCAN Settlement Funds will result in the Trust holding approximately $700 million on

the Effective Date, a significant increase from the estimated $300 million contemplated

under the Prior Plan.  Prior Confirmation Opinion at 4-5, 72; Gordon Declaration, ¶ 8.

b.      The Imperial Protected Parties share an identity of interest with the Plan

Proponents.  Any released and enjoined claim against the Imperial Protected Parties

would arise on account of the Debtors' products and activities, and would result in

litigation that is likely to deplete the assets of Reorganized Flintkote or the Trust.  Gordon

Declaration, ¶ 10; Thauvette Declaration, ¶ 2.  In addition, Imperial and Flintkote are

partially covered by certain joint insurance policies containing shared aggregate limits.

Gordon Declaration, ¶ 11.

---

[9] These five factors are (i) whether the non-debtor has made a substantial contribution of assets
to the reorganization, (ii) whether there is an identity of interest between the debtor and the third
party, (iii) the necessity of the releases and injunction provisions to the reorganization, (iv) the
overwhelming acceptance of the plan and release and injunction provisions by creditors and
interest holders, and (v) whether there is provision in the plan for payment of all or substantially
all of the claims of the affected Class or Classes. *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110
(Bankr. D. Del. 1999) (Walrath, J.).

c.     Approval of the release of Imperial Released Claims and Supplemental Settlement Bar Order are integral conditions to the consummation of the Settlement, and therefore the Plan. Imperial would not have agreed to settle and contribute $575 million without such protections. Thauvette Declaration, ¶ 4; Gordon Declaration, ¶ 7.

d.     The Plan has been overwhelmingly accepted. Over 94% of creditors holding Asbestos Personal Injury Claims against Flintkote, and over 99% of creditors holding such claims against Mines, have voted, or maintained their votes, in favor of the Plan. Voting Declaration, ¶ 38. The Asbestos Claimants Committee and Future Claimants Representative actively negotiated and support the ITCAN Settlement Agreement and the included releases. McMonagle Declaration, ¶¶ 7, 9-11.

e.     The Plan provides for distributions to all Classes of Claims affected by the release of the Imperial Released Claims and the Supplemental Settlement Bar Order. Imperial's contribution of $575 million will significantly increase the funds available for distribution. Gordon Declaration, ¶ 8; McMonagle Declaration, ¶ 10.

23.     As discussed above, the Plan Proponents have provided sufficient notice regarding the release of the Imperial Released Claims and the Supplemental Settlement Bar Order. Confirmation Order ¶¶ 9-12.

**2.     The ITCAN Settlement Agreement Is Within The Range of Reasonableness**

24.     In determining whether to approve a settlement, courts consider four criteria: (i) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and related expense and inconvenience; and (4) the interests of the creditors. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citing *TMT Trailer Ferry, Inc.*, 390 U.S. at 424-25); *see also In re Washington Mutual, Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011) (Walrath, J.) ("[T]he settlement need only be above 'the lowest point

in the range of reasonableness.'"). Each of these factors is satisfied for the reasons set forth in more detail in the Confirmation Brief. *See* Confirmation Brief at 25-30.

a. The first and third *TMT* factors support approval. The Debtors and Imperial have been engaged in hotly-contested, multi-pronged litigation for most of these Chapter 11 Cases. On the bankruptcy front, Imperial remained the lone objector to confirmation of the Prior Plan until the parties entered into the ITCAN Settlement Agreement. On the litigation front, the Flintkote Plaintiffs have spent the past nine years pursuing Imperial in the Dividend Recovery Litigation for damages in excess of $640 million, plus prejudgment interest, on a variety of theories. Gordon Declaration, ¶ 16; *see also* Confirmation Brief at 26. Although the Debtors believe that they would ultimately prevail over Imperial in the Dividend Recovery Litigation and Imperial's appeal of the Prior Confirmation Order, the benefits of complex litigation victories—which themselves are not guaranteed—are outweighed by the certain and substantial sum received immediately from Imperial under the ITCAN Settlement Agreement. Gordon Declaration, ¶¶ 9, 12.

b. Imperial has consistently opposed many of the Debtors' actions during these Chapter 11 Cases. Among other filings, Imperial pursued: (i) numerous objections to the Prior Plan and its predecessors, (ii) claims against the Debtors' Estates, (iii) three separate appeals, including its appeal of the confirmation of the Prior Plan currently pending before the Third Circuit, and (iv) objections to the Debtors' (a) original voting procedures motion (D.I. 2490), (b) Disclosure Statement (D.I. 2508, 3152), (c) original solicitation procedures (D.I. 2781), (d) request for a determination that a particular amendment did not require resolicitation of asbestos claimants (D.I. 6414), (e) settlement

19

with Sullivan & Cromwell (D.I. 3789), (f) multiple settlements with insurers (D.I. 2630, 3097, 5155), and (g) proposed commercial real estate purchases (D.I. 3421, 3643, 4769, 4905, 6026, 6851, 7438, 7439). The ITCAN Settlement Agreement puts an end to these challenges and any further disputes that might arise if the ITCAN Settlement Agreement were not approved. Confirmation Brief at 26.

c.      Approving the ITCAN Settlement Agreement eliminates any further risk of delay and attendant expense in pursuing the Dividend Recovery Litigation and appeals the Prior Confirmation Order. Gordon Declaration, ¶¶ 13-16.

d.      The second *TMT* factor supports approval. There are practical impediments to collection due to Imperial's status as a Canadian company which are eliminated by settling. Gordon Declaration, ¶ 15.

e.      The fourth *TMT* factor supports approval. One of the Plan Proponents' primary purposes in negotiating the ITCAN Settlement Agreement was to maximize recoveries for creditors of the Estates. Gordon Declaration, ¶ 6. As discussed above, the Asbestos Claimants Committee and Future Claimants Representative were heavily involved in the negotiation of the ITCAN Settlement Agreement and support its approval. McMonagle Declaration, ¶¶ 7, 9-11; Gordon Declaration, ¶ 7. Individual creditors have also voted overwhelmingly to support the Plan. Voting Declaration, ¶ 38.

25.     For the reasons discussed above, the ITCAN Settlement Agreement is hereby approved in its entirety under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

DOCS_DE:200917.1 28451/001

**J.     Compliance with Section 1129**

26.     The Bankruptcy Court has considered the findings and conclusions contained in its Prior Confirmation Opinion in which it found that the Prior Plan "complie[d] with § 1129 . . . in all respects." Prior Confirmation Order at 3.

**1.     Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

27.     The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code, as set forth below and as demonstrated by the record in these Chapter 11 Cases.

**2.     Sections 1122 and 1123(a)(1)-(4) – Classification and Treatment of Claims and Interests**

28.     The Plan constitutes a separate plan of reorganization for each of the Debtors. Article III of the Plan properly classifies each Claim against and Interest in each of the Debtors into a Class containing only substantially similar Claims or Equity Interests. Plan §§ 3.1-3.2.

29.     Article III of the Plan segregates Claims and Equity Interests with respect to Flintkote as follows: (i) Class 1 – Flintkote Priority Claims; (ii) Class 2 – Mines Priority Claims; (iii) Class 3 – Flintkote Secured Claims; (iv) Class 4 – Mines Secured Claims; (v) Class 5 – Flintkote Unsecured Claims; (vi) Class 6 – Mines Unsecured Claims; (vii) Class 7 – Flintkote Asbestos Personal Injury Claims; (viii) Class 8 – Mines Asbestos Personal Injury Claims; (ix) Class 9 – Equity Interests in Flintkote; and (x) Class 10 – Equity Interests in Mines. *Id.* The number of Classes reflects the diverse characteristics of those Claims against and Equity Interests in the Debtors.

DOCS_DE:200917.1 28451/001

30.     The legal rights under the Bankruptcy Code of each of the holders of Claims or Equity Interests within a particular Class are substantially similar to other holders of Claims or Equity Interests within that Class. Flintkote Asbestos Personal Injury Claims and Mines Asbestos Personal Injury Claims have been separately classified in Classes 7 and 8, respectively, due to the distinctive bases for such Claims and the fact that, unlike all other Classes of Claims, Asbestos Personal Injury Claims will be paid by the Trust. Asbestos Personal Injury Claims against each Debtor are placed in a single Class as against the applicable Debtor and are accorded the same treatment under the Plan, regardless of whether claimants hold Claims or Demands. *See* Plan §§ 1.1.63 (defining "Flintkote Asbestos Personal Injury Claim" to include Flintkote Asbestos Personal Injury Demands); 1.1.88 (defining "Mines Asbestos Personal Injury Claim" to include Mines Asbestos Personal Injury Demands); 3.2.7-3.2.8 (providing that Asbestos Personal Injury Claims shall be "liquidated and, as appropriate, paid by the Trust pursuant to and in accordance with the Trust Distribution Procedures").

31.     The Plan specifies that Class 1 (Flintkote Priority Claims), Class 2 (Mines Priority Claims), Class 3 (Flintkote Secured Claims) and Class 4 (Mines Secured Claims) are Unimpaired under the Plan, thereby satisfying section 1123(a)(2). Plan §§ 3.2.1-.3.2.4.

32.     The Plan designates Class 5 (Flintkote Unsecured Claims), Class 6[10] (Mines Unsecured Claims), Class 7 (Flintkote Asbestos Personal Injury Claims), Class 8 (Mines Asbestos Personal Injury Claims), Class 9 (Equity Interests in Flintkote) and Class 10 (Equity Interests in Mines) as Impaired and specifies the treatment of claims or interests in those Classes, thereby satisfying section 1123(a)(3). Plan §§ 3.2.5-3.2.10.

---

[10] As this Bankruptcy Court previously found, Class 6 did not contain any qualifying members, and thus no votes were cast in Class 6. Prior Confirmation Order, ¶ 16.

33.     Article III of the Plan provides the same treatment for each Allowed Claim or Equity Interest in a particular Class unless the holder of such Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4).

34.     Due to their entitlement to priority status under section 507 of the Bankruptcy Code, Flintkote Priority Claims and Mines Priority Claims have been separately classified in Classes 1 and 2, respectively. Plan §§ 3.2.1-3.2.2. Based on their secured status, Flintkote Secured Claims and Mines Secured Claims have been separately classified in Classes 3 and 4, respectively. Plan §§ 3.2.3-3.2.4. Because of their status as general unsecured claims, Flintkote Unsecured Claims and Mines Unsecured Claims have been separately classified in Classes 5 and 6, respectively. Plan §§ 3.2.5-3.2.6. Personal Injury Claims arising from alleged exposure to asbestos against the Debtors have been separately classified in Classes 7 and 8, respectively. Plan §§ 3.2.7-3.2.8. Finally, Equity Interests in Flintkote and Mines have been separately classified in Classes 9 and 10, respectively, because they consist of Equity Interests in the Debtors, not Claims against them. Plan §§ 3.2.9-3.2.10.

35.     Thus, the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code are satisfied.

### 3.     Section 1123(a)(5) – Adequate Means for Implementation of the Plan

36.     The Plan, including Article X, provides adequate and proper means for implementation, including, among other things, (i) the continued corporate existence of Flintkote under Sections 10.2 and 10.3 of the Plan and the vesting of the Non-Trust Assets in Reorganized Flintkote (Plan § 11.1); (ii) the adoption of the corporate constituent documents that will govern Reorganized Flintkote and the identification of the initial board of directors of Reorganized Flintkote (Plan § 10.2; Plan Supplement, Exhibits 1-2, 10-11; Confirmation Brief at 32-33); (iii) the merger of Mines with and into Flintkote, with Flintkote remaining as the surviving entity

(Plan § 10.3) (the "Merger"); (iv) the vesting of authority in the appropriate officers of the Debtors and Reorganized Flintkote to authorize, execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan (Plan § 10.5); (v) the various discharges, releases, injunctions, indemnifications, and exculpations provided under the Plan, including those set forth in Article XII of the Plan; (vi) the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases to which either Debtor is a party (Plan §§ 5.1-5.3); (vii) the issuance of New Flintkote Stock (Plan § 4.5); and (viii) the creation of the Trust, the transfer of certain assets to the Trust, the assumption of Asbestos Personal Injury Claims by the Trust, the appointment of the Trustees and the Trust Advisory Committee, and the resolution of Asbestos Personal Injury Claims in accordance with the Trust Distribution Procedures (Plan §§ 4.1-4.11). Thus the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

**4.  Section 1123(a)(6) – Prohibition Against the Issuance of Nonvoting Equity Securities and Adequate Provisions for Voting Power of Classes of Securities**

37.  The Plan complies with section 1123(a)(6) in that Reorganized Flintkote's charters, bylaws or similar constituent documents contain provisions prohibiting the issuance of nonvoting equity securities and provide for the appropriate distribution of voting power among all classes of equity securities authorized for issuance.  In particular, Section 10.2 of the Plan provides that the Amended Bylaws and the Amended Certificate of Incorporation of Reorganized Flintkote will, among other things, prohibit the issuance of nonvoting equity securities to the extent required under section 1123(a) of the Bankruptcy Code.  Plan § 10.2.  This prohibition is stated in the forms of Amended Bylaws (Plan Supplement, Exhibit 1) and Amended Certificate of Incorporation (Plan Supplement, Exhibit 2).

24

5. **Section 1123(a)(7) – Selection of Directors and Officers in a Manner Consistent with the Interests of Creditors and Equity Security Holders and Public Policy**

38. The Bankruptcy Court has considered ¶¶ 21-22 of the Prior Confirmation Order, and finds that the Plan complies with section 1123(a)(7) because the manner of selection of officers and directors of Reorganized Flintkote is consistent with the interests of creditors and equity security holders and with public policy.

39. On the Effective Date, consistent with the best interests of the holders of Claims against and Equity Interests in Flintkote, Flintkote's directors will be replaced by the Initial Board of Directors for Reorganized Flintkote, comprising David Gordon, Flintkote's Chief Executive Officer, James J. McMonagle, the Future Claimants Representative, and W. Howard Morris, MBA, CFA, CPA/PFS and a Member of the Board of Directors for Owens Corning Corporation and Federal-Mogul Corporation (who was selected by the Asbestos Claimants Committee). Plan Supplement, Exhibits 10-11. Thus, a majority of the individuals controlling Reorganized Flintkote's corporate governance will be creditor representatives. *Id.*; Prior Confirmation Order ¶ 22.

40. On the Effective Date, consistent with the best interests of the holders of Claims against and Equity Interests in Flintkote, Flintkote's current officers—David Gordon, Chief Executive Officer, and Don Oliver, Chief Financial Officer—will remain officers of Reorganized Flintkote. Gordon Declaration, ¶ 19.

41. Although section 1123(a)(7) of the Bankruptcy Code does not apply to the selection of the Trustees or the Trust Advisory Committee, the Plan also identifies each of the initial Trustees of the Trust, the Trust Advisory Committee, and the Future Claimants Representative, and provides mechanisms for selection of successor Trustees, Trust Advisory Committee members, and future claimants representatives. Plan §§ 4.2-4.3; Trust Agreement

25

§§ 5.1, 5.3, 6.1, 6.4, 7.1, 7.4; Plan Supplement, Exhibit 3. The initial Trust Advisory Committee members will be James Ferraro, Steve Baron, Alan Kellman, Perry Weitz, Steve Kazan, and David Lipman, who were selected by the Asbestos Claimants Committee. Trust Agreement § 6.1; Plan Supplement, Exhibit 3. James J. McMonagle, who has served as the Future Claimants Representative in these Chapter 11 Cases, will continue to serve as the Future Claimants Representative post-confirmation, pursuant to the terms of the Trust Agreement. Trust Agreement § 7.1; Plan § 4.3.3. The Asbestos Claimants Committee and Future Claimants Representative have selected the proposed initial Trustees for the Trust. *See* Notice of Selection of Trustees for the Flintkote Asbestos Trust (D.I. 5413). The initial Trustees shall be appointed by the Bankruptcy Court pursuant to the terms of the Plan and the Trust Agreement. Plan § 1.1.131, 4.2; Trust Agreement § 5.1.

6.    **Section 1123(b)(1) – Impairment of Claims and Interests**

42.    Article III of the Plan provides for the impairment of certain Classes of Claims and Equity Interests, while leaving other Classes unimpaired. Plan §§ 3.1-3.2. The Plan thus modifies the rights of the holders of certain Claims and Equity Interests and leaves the rights of others unaffected.

7.    **Section 1123(b)(2) – Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases**

43.    The Bankruptcy Court has considered ¶ 24 of the Prior Confirmation Order, and finds that Article V of the Plan provides that, except as otherwise provided in Sections 5.1 and 12.9 of the Plan and the Plan Documents,[11] all Executory Contracts to which either of the Debtors is a party and that have not been expressly assumed, or assumed and assigned, by the

---

[11] The Plan defines "Plan Documents" as "the Plan, the Disclosure Statement, the Trust Agreement, the Trust Distribution Procedures, any document contained in the Plan Supplement, and all of the exhibits and schedules attached to any of the foregoing." Plan § 1.1.100.

26

Debtors, or either of them, in accordance with section 365 of the Bankruptcy Code on or prior to the Confirmation Date shall, as of the Effective Date, be deemed to have been rejected. Plan § 5.1.

44.     The rejection by the Debtors of all existing Executory Contracts, except as otherwise provided in Section 5.1 and/or Section 12.9 of the Plan and the Plan Documents, is both beneficial and necessary to Reorganized Flintkote's business operations. The rejection of these Executory Contracts pursuant to the Plan is a sound exercise of the Debtors' business judgment and is in the best interest of the Debtors, their Estates, and their creditors. In addition, the assumption by Reorganized Flintkote of certain indemnification obligations and the proposed preservation of such obligations post-emergence pursuant to Section 12.9 of the Plan is of fundamental importance to Flintkote's reorganization process, is a sound exercise of business judgment and is in the best interest of the Debtors and their Estates and creditors.

8.      **Section 1123(b)(3) – Retention, Enforcement and Settlement of Claims Held by the Debtors**

        i.      **ITCAN Settlement Agreement**

45.     The Plan implements the terms of the ITCAN Settlement Agreement. As set forth in more detail above, the ITCAN Settlement Agreement is the product of arms' length, good-faith negotiations by and among the Debtors, the Asbestos Claimants Committee, the Future Claimants Representative, and Imperial. The terms of the ITCAN Settlement Agreement are fair, reasonable, and in the best interests of the Debtors, their Estates, and their creditors. Confirmation Order ¶¶ 15-25; Gordon Declaration, ¶¶ 5-16; McMonagle Declaration, ¶ 9.

DOCS_DE:200917.1 28451/001

### ii.    Other Terms

46.    Section 11.1 of the Plan provides that upon the Effective Date, claims, rights and causes of action (other than those released under the Plan, including the Imperial Released Claims, and those that constitute Trust Assets) that were property of each Debtor and its Estate shall be retained and enforced by Reorganized Flintkote as the appointed Estate representative, with the Trust appointed as co-Estate representative with Reorganized Flintkote to the extent provided for in Section 11.5 of the Plan.  Plan §§ 11.1.1-11.1..2.

47.    Except as provided in Section 11.2 of the Plan, Reorganized Flintkote will retain and enforce as the appointed Estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code all defenses and counterclaims to all Claims that were or could have been asserted against the Debtors, or their respective Estates, including, but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.  *Id.*  On or after the Effective Date, Reorganized Flintkote may, without Bankruptcy Court approval, pursue, settle, take any action to realize upon or withdraw such claims, rights, or causes of action (other than the Trust Causes of Action) as it determines in accordance with its best interests, *provided, however*, that the Plan Proponents shall dismiss with prejudice the claims they have brought in the Dividend Recovery Litigation in accordance with Section H.2 of the ITCAN Settlement Agreement.  Plan § 11.1.2.

48.    In addition, on the Effective Date, all Trust Causes of Action will be transferred to and vested in the Trust.  Plan § 11.2.  Except as otherwise provided in the Plan or this Confirmation Order, the Trust will, as the appointed Estate representative, retain and enforce in accordance with section 1123(b) of the Bankruptcy Code, all Trust Causes of Action, including but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.  *Id.*

28

49.     Finally, on the Effective Date, except as otherwise provided in the Plan or this

Confirmation Order, the Trust will, as the appointed Estate representative, retain and enforce in

accordance with section 1123(b) of the Bankruptcy Code, all Asbestos Insurance Actions, along

with the rights and obligations of the Debtors and Reorganized Flintkote with respect to Asbestos

Insurance Policies and claims thereunder, to the extent that such Policies and claims relate to

Asbestos Personal Injury Claims but not as to any other claims covered thereby.  Plan § 11.3.

**9.      Section 1123(b)(5) – Modification of the Rights of Holders of Claims and
         Equity Interests**

50.     The Plan modifies or leaves unaffected, as the case may be, the rights of the

holders of each Class of Claims and Equity Interests.  Plan §§ 3.1-3.2.

**10.     Section 1123(b)(6) – Other Provisions Not Inconsistent with Applicable
         Provisions of the Bankruptcy Code**

51.     The Plan's provisions are appropriate and not inconsistent with the applicable

provisions of the Bankruptcy Code, including provisions: (i) governing treatment on account of

allowed Claims and Equity Interests (Plan §§ 3.1-3.2); (ii) governing the Trust and the treatment

of Asbestos Personal Injury Claims (Plan §§ 4.1-4.11); (iii) governing executory contracts and

unexpired leases (Plan §§ 5.1-5.3); (iv) governing distributions under the Plan (Plan §§ 6.1-6.8);

(v) establishing procedures for resolving Disputed Claims and making distributions on account

of such Disputed Claims once resolved (Plan §§ 7.1-7.4); (vi) governing implementation of the

Plan (Plan §§ 10.1-10.10); (vii) governing the effect of confirmation, including the provisions

relating to insurance neutrality and litigation neutrality (Plan §§ 11.1-11.7); (viii) governing the

injunctions, releases and discharge to be effected by the Plan (Plan §§ 12.1-12.9); and (ix)

regarding retention of jurisdiction by the Bankruptcy Court and District Court over certain

matters after the Effective Date (Plan §§ 13.1-13.6).

DOCS_DE:200917.1 28451/001

### 11. Section 1123(d) – Cure of Defaults

52.     The Plan provides that any assumption, or assumption and assignment, of an Executory Contract by either or both of the Debtors is to be done in accordance with section 365 of the Bankruptcy Code.  Plan § 5.1.

### 12. Section 1129(a)(2) – Compliance with Applicable Provisions of the Bankruptcy Code

53.     The Bankruptcy Court has already determined that: (i) the Second Supplemental Disclosure Document contained adequate information, and (ii) the procedures by which the ballots for acceptance or rejection of the Plan (including the procedures followed in solicitation of votes on the Prior Plan (Prior Confirmation Order ¶¶ 33-34; Voting Declaration, ¶¶ 3-10)) were solicited and tabulated were fair, properly conducted, and employed in accordance with sections 1125, 1126 and 1127 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and the Solicitation Procedures Order.  *See* Solicitation Procedures Order, ¶¶ 2-3, 15.

54.     In light of the foregoing, the procedures for soliciting votes on the Plan, and the notice provided in connection therewith, are adequate and sufficient under the circumstances, and the Plan Proponents and each of their respective directors, officers, employees, agents, members and professionals, acting in such capacity, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code.

### 13. Section 1129(a)(3) – Proposal of the Plan in Good Faith

55.     The Bankruptcy Court and District Court previously determined that the Prior Plan was proposed in good faith.  Prior Confirmation Order ¶ 35; Prior Affirmation Order at 2. The Debtors, the Asbestos Claimants Committee and the Future Claimants Representative proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the

30

circumstances surrounding the filing of the Chapter 11 Cases, the terms of the Plan, the process leading to the formulation of the Plan, and the solicitation of votes on the Plan.

56.    The ITCAN Settlement Agreement, which drives the material changes in the Plan, was heavily negotiated at arms' length with substantial involvement from the Asbestos Claimants Committee and Future Claimants Representative and provides material and substantial benefits to the Estates.  Gordon Declaration, ¶¶ 6-7, 12, 16; McMonagle Declaration, ¶¶ 6-7, 10. Based on the evidence presented in connection with the Confirmation Hearing and the entire record of the Chapter 11 Cases, the Court finds and concludes that the Plan has been proposed with the legitimate purposes of: (i) reorganizing the affairs of Flintkote, (ii) merging Mines with and into Flintkote, (iii) providing a mechanism for the orderly, fair and equitable resolution of pending and future Asbestos Personal Injury Claims against the Debtors, and (iv) maximizing the returns available to creditors and other parties in interest, all consistent with the objectives and purposes of chapter 11 of the Bankruptcy Code.

57.    As set forth in more detail below, the Plan achieves a global resolution of the present and future Asbestos Personal Injury Claims in accordance with section 524(g) of the Bankruptcy Code.  Moreover, the arms' length negotiations among the Debtors, the Asbestos Claimants Committee, and the Future Claimants Representative, among others, leading to the Plan's formulation, as well as the overwhelming support of creditors for the Plan, provide independent evidence of the Debtors' and the other Plan Proponents' good faith in proposing the Plan.  These negotiations also support a finding that the Plan is designed to allow Flintkote to reorganize, to the benefit of the Debtors' creditors, by providing Reorganized Flintkote with a capital structure and business plan that will allow it to satisfy the Debtors' Plan obligations. Gordon Declaration, ¶¶ 20-23.

## 14. Section 1129(a)(4) – Court Approval of Certain Payments as Reasonable

58.     The Plan complies with section 1129(a)(4) of the Bankruptcy Code. The payments for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incidental to the Chapter 11 Cases, including Claims for professional fees that have been or will be paid by a Debtor have been, or will be, authorized by order of the Bankruptcy Court or are otherwise permitted under the Bankruptcy Code. Section 14.1 of the Plan provides for the payment of Fee Claims in accordance with the Compensation Procedures Order,[12] which, in turn, requires holders of Fee Claims to seek and obtain Bankruptcy Court approval for payment of such Claims. Plan § 14.1; Compensation Procedures Order.

59.     In connection with the foregoing, Section 13.3 of the Plan provides that the Bankruptcy Court will retain jurisdiction after the Effective Date to hear and determine applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan. Plan § 13.3(f).

60.     The Debtors are obligated under a court-approved retention agreement to compensate the Dividend Recovery Litigation Counsel on both a reduced hourly and contingent basis. (D.I. 1461, Ex. A). On July 9, 2015, the Dividend Recovery Litigation Counsel submitted their final fee application (D.I. 8994), seeking approval for their fees, consisting of (i) discounted interim hourly rate-based fees, (ii) guideline hourly rate restoration, and (iii) a percentage-based contingency fee. The Bankruptcy Court has approved this final fee application in a concurrently-entered order, and each of the Debtors or Reorganized Flintkote, as applicable, is authorized to

---

[12] The Compensation Procedures Order is defined as that certain Order Appointing Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals and Members of the Official Committee and Consideration of Fee Applications, dated August 19, 2004 (D.I. 183).

pay or direct the payment of the entire Allowed DRL Fee Amount on the Effective Date pursuant to section 14.1.2 of the Plan.

61.    As part of the ITCAN Settlement Agreement, the Debtors were required to obtain the dismissal of the claims asserted by the Hopkins Plaintiffs (as defined in the ITCAN Settlement Agreement) against Imperial.  ITCAN Settlement Agreement § H.3.  Toward that end, the Debtors entered into a settlement with the Hopkins Plaintiffs, pursuant to which the Debtors sought approval for the payment of $400,000—only $50,000 of which would otherwise be available to creditors of the Estates—to the Hopkins Plaintiffs in connection with a settlement and release of claims against the Debtors and Imperial.  (D.I. 8977).  The Court approved the settlement between the Debtors and the Hopkins Plaintiffs on July 22, 2015.  (D.I. 9014).

**15.    Section 1129(a)(5) – Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

62.    The Plan Proponents have disclosed the identity of the individuals proposed to serve, after confirmation of the Plan, as officers or directors of Reorganized Flintkote.  Plan Supplement, Exhibits 10-11; Gordon Declaration, ¶¶ 17-19.

63.    The Plan Proponents have also disclosed the identity of all insiders who will be employed or retained by Reorganized Flintkote, and the compensation of such insiders.  Plan Supplement, Exhibits 6, 12; Gordon Declaration, ¶¶ 17-19.

64.    The Bankruptcy Court has considered ¶¶ 38-40 of the Prior Confirmation Order and the record in these Chapter 11 Cases and finds that the appointment or continuance of the proposed directors and officers of Reorganized Flintkote under the Plan to be consistent with the interests of the holders of Claims and Equity Interests and with public policy.  Accordingly, this Court finds and concludes that section 1129(a)(5) has been satisfied.

16. **Section 1129(a)(6) – Approval of Rate Changes**

65.     Section 1129(a)(6) of the Bankruptcy Code is inapplicable because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

17. **Section 1129(a)(7) – Best Interests of Holders of Claims and Interests**

66.     The Bankruptcy Court previously found and determined that the Prior Plan satisfied section 1129(a)(7) of the Bankruptcy Code. *See* Prior Confirmation Order, ¶ 43; Prior Confirmation Order at 15. Based on the record in these Chapter 11 Cases, the Bankruptcy Court hereby finds and determines that, in light of the additional funds that will be distributed to creditors as a result of the ITCAN Settlement Agreement, the modifications contained in the Plan also satisfy section 1129(a)(7) of the Bankruptcy Code. Each holder of an Impaired Claim that has not accepted the Plan will, on account of such Claim, receive or retain under the Plan property having a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. Disclosure Statement § 10.2(e); Prior Confirmation Order ¶ 43.

18. **Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Class**

67.     All Classes of Claims and Equity Interests have accepted the Plan or are deemed to have accepted the Plan, are Unimpaired, or are Impaired and deemed to reject. Specifically, Class 5 – Flintkote Unsecured Claims, Class 6[13] – Mines Unsecured Claims, Class 7 – Flintkote Asbestos Personal Injury Claims, and Class 8 – Mines Asbestos Personal Injury Claims were Impaired and entitled to vote on the Plan, and each such Impaired voting Class was deemed to or has voted to accept the Plan by at least two-thirds in amount and more than one-half in number

---

[13] No votes were cast in Class 6 – Mines Unsecured Claims, because there were no qualifying members of Class 6. Class 6 is deemed to accept the Plan. Prior Confirmation Order, ¶ 44.

of Claims (in accordance with section 1126(c) of the Bankruptcy Code) or, in the case of Class

10 – Mines Equity Interests, by at least two-thirds in amount (in accordance with section 1126(d)

of the Bankruptcy Code). Plan § 3.2.5-3.2.10; Voting Declaration, ¶ 38. Additionally, Classes 7

and 8 accepted the Plan by a 94.11% and 99.99% supermajority vote, respectively as required by

section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code. Voting Declaration, ¶ 38. Class 1 –

Flintkote Priority Claims, Class 2 – Mines Priority Claims, Class 3 – Flintkote Secured Claims,

and Class 4 – Mines Secured Claims are Unimpaired under the Plan and, therefore, are deemed

to have accepted the Plan. Plan §§ 3.2.1-3.2.3. Class 9 – Equity Interests in Flintkote, is

Impaired, will receive no value under the Plan, and is therefore deemed to have rejected the Plan

pursuant to section 1126(g) of the Bankruptcy Code. Plan § 3.2.9. Thus, the Plan satisfies

section 1129(a)(8). Voting Declaration, ¶ 38.

19. **Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

68. In accordance with section 1129(a)(9) of the Bankruptcy Code, the Plan provides

for the payment of Administrative Claims, Priority Tax Claims, Class 1 – Flintkote Priority

Claims, and Class 2 – Mines Priority Claims. The Plan provides that, subject to certain bar date

provisions in the Plan, and unless otherwise agreed by the holder of an Administrative Claim and

the applicable Debtor or Reorganized Flintkote, each holder of an allowed Administrative Claim

shall receive, as soon as reasonably practicable after the Distribution Date,[14] in full satisfaction,

settlement, release and discharge of and in exchange for such allowed Administrative Claim,

Cash equal to the unpaid portion of such allowed Administrative Claim on such terms as may be

agreed to by the holders of such Claims and the applicable Debtor or Reorganized Flintkote;

---

[14] The "Distribution Date" is defined, alternatively, as (i) the Effective Date, or (ii) the date that
such claim becomes allowed, depending on whether the Claim in question has been allowed or
disallowed as of the Effective Date. *See* Plan §§ 1.1.45.

*provided, however*, that allowed Administrative Claims representing liabilities incurred on or after the Petition Date in the ordinary course of business by either of the Debtors shall be paid by Reorganized Flintkote in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto. Plan § 2.1.

69.     The Plan provides that each holder of an allowed Priority Tax Claim shall receive on the Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for such allowed Priority Tax Claim, Cash equal to the amount of such allowed Priority Tax Claims. Plan § 2.2.

70.     The Plan provides that each holder of an allowed Claim in Class 1 – Flintkote Priority Claims shall receive on the Distribution Date Cash equal to the allowed amount of such Priority Claim. Plan § 3.2.1.

71.     The Plan provides that each holder of an allowed Claim in Class 2 – Mines Priority Claims shall receive on the Distribution Date Cash equal to the allowed amount of such Priority Claim. Plan § 3.2.2.

**20.     Section 1129(a)(10) – Acceptance By at Least One Impaired, Non-Insider Class**

72.     At least one Class of Claims that is Impaired under the Plan has voted to accept the Plan, determined without including the acceptance by any insider, with respect to each of the Debtors. Voting Declaration, ¶ 38.

**21.     Section 1129(a)(11) – Feasibility of Plan**

73.     The Bankruptcy Court previously determined that the Prior Plan was feasible. Prior Confirmation Order, ¶ 51; Prior Confirmation Opinion at 60-75. Based on the facts set forth in the Gordon Declaration, and as more fully explained in the Confirmation Brief, Reorganized Flintkote's financial picture has improved. Confirmation Brief at 33-36; Gordon

DOCS_DE:200917.1 28451/001

Declaration, ¶ 20-23. Accordingly, the Plan continues to be feasible, and not likely to be followed by the liquidation or the need for further financial reorganizations of the Debtors, Reorganized Flintkote, or any successor to Reorganized Flintkote.

**22.    Section 1129(a)(12) – Payment of Statutory Bankruptcy Fees**

74.    Section 1129(a)(12) of the Bankruptcy Code is satisfied because the Plan provides (i) that all fees payable under 28 U.S.C. § 1930 shall be paid on or before the Effective Date, and (ii) that Reorganized Flintkote shall pay all such fees that arise after the Effective Date. Plan § 14.12.

**23.    Section 1129(a)(13)  – Retiree Benefits and Domestic Support Obligations**

75.    Section 1129(a)(13) is not applicable in these Chapter 11 Cases because the Debtors neither provide "retiree benefits" nor "domestic support obligations" within the meaning of section 1114 of the Bankruptcy Code.

**24.    Section 1129(b) – Confirmation of Plan Over Nonacceptance of an Impaired Class**

76.    The Bankruptcy Court has considered ¶¶ 54-55 of the Prior Confirmation Order, and finds that section 1129(b) of the Bankruptcy Code permits confirmation of the Plan, notwithstanding that Class 9 – Equity Interests in Flintkote is Impaired and is deemed to have rejected the Plan, so long as the Plan does not discriminate unfairly and is fair and equitable with respect to Class 9. The Plan is fair and equitable with respect to Class 9 because: (i) there are no Classes junior to Class 9 that will receive any distributions under the Plan, and (ii) no Holder of a Claim in any Class senior to the Equity Interests in Flintkote in Class 9 will receive more than full payment on account of its Claims, as evidenced by the valuations and estimates in the Disclosure Statement.

77.    Further, the Plan does not discriminate unfairly with respect to Class 9 because there are no other Classes with legal rights similar to those of Class 9. Class 10, consisting of Equity Interests in Mines (which is merging with and into Flintkote on the Effective Date) has different legal interests than Class 9, consisting of Equity Interests in Flintkote, which is reorganizing. Moreover, Flintkote, as the sole holder of Equity Interests in Mines, will receive no distribution on account of its Equity Interests in Mines. Plan, § 3.2.10. Rather, upon consummation of the Merger, the assets of Mines will be transferred to the Trust. Plan, §§ 3.2.10; 4.5. Accordingly, the Plan's separate classification and treatment of Class 9 is consistent with the legal entitlements and priorities of Equity Interests in that Class, the Plan does not discriminate unfairly with respect to Class 9, and the requirements of section 1129(b) are satisfied. Prior Confirmation Order ¶ 54-55.

**25.    Section 1129(c) – Only One Plan Confirmed**

78.    Section 1129(c) of the Bankruptcy Code provides that this Court may "confirm only one plan." The Plan is a modified version of the Prior Plan and, pursuant to section 1127(b) of the Bankruptcy Code and Section 10.10.1 of the Plan, will supersede the Prior Plan by its terms on the earlier of the Effective Date or the date the Affirmation Order becomes a Final Order, thereby satisfying section 1129(c) of the Bankruptcy Code.

**26.    Section 1129(d) – Principal Purpose of Plan**

79.    The Bankruptcy Court has considered ¶ 55 of the Prior Confirmation Order, and finds that the principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, and there has been no filing by any governmental unit alleging such avoidance. Accordingly, the Plan is confirmable under section 1129(d) of the Bankruptcy Code. Prior Confirmation Order ¶ 55.

DOCS_DE:200917.1 28451/001

**K.    Compliance with Section 524(g)**

80.     The Bankruptcy Court has considered the findings and conclusions contained in its Prior Confirmation Opinion, in which it found that the Prior Plan "complie[d] with . . . § 524(g) in all respects."  Prior Confirmation Opinion at 3.

81.     Among the changes made to the Prior Plan and embodied in the Plan is the inclusion of Mines Asbestos Personal Injury Claims and Mines Asbestos Personal Injury Demands within the scope of the Third Party Injunction, the Insurance Entity Injunction (as applicable), and the Supplemental Settlement Bar Order (as applicable).  As previously determined in the Prior Confirmation Opinion and Prior Confirmation Order, Flintkote is eligible for protection from Asbestos Personal Injury Claims and Asbestos Personal Injury Demands under section 524(g) of the Bankruptcy Code.  As further detailed below, the combined legal entity of Flintkote and Mines resulting from the Merger qualifies for a discharge and for Section 524(g) protection.  Due to the Merger, and for the reasons set forth below, the Third Party Injunction, the Insurance Entity Injunction (as applicable), and the Supplemental Settlement Bar Order (as applicable) properly enjoins all Asbestos Personal Injury Claims and Asbestos Personal Injury Demands.

82.     On the basis of the Prior Confirmation Opinion, the full record of these Chapter 11 Cases, and the terms of the Plan, the Bankruptcy Court finds and determines that the Third Party Injunction, the Insurance Entity Injunction (as applicable), the Supplemental Settlement Bar Order (as applicable) to be issued, and the Trust to be established by virtue of this Confirmation Order, are consistent with the provisions of section 524(g) of the Bankruptcy Code.

DOCS_DE:200917.1 28451/001

1.    **Section 524(g)(2)(B)(i)(I) – Assumption of Liabilities by Trust**

83.    Section 524(g)(2)(B)(i)(I) of the Bankruptcy Code requires that the Trust "assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products." 11 U.S.C. § 524(g)(2)(B)(i)(I). The Bankruptcy Court has considered the findings and conclusions contained in the Prior Confirmation Opinion and the record in these Chapter 11 Cases and determines that this requirement is satisfied here because, pursuant to the Plan, the Trust is to assume liabilities of the Debtors for all Asbestos Personal Injury Claims. Plan § 4.4.

2.    **Section 524(g)(2)(B)(i)(II)-(III) – Funding of Trust; Transfer of Voting Shares**

84.    Sections 524(g)(2)(B)(i)(II)-(III) of the Bankruptcy Code require that the Trust be funded by the securities of one or more debtor, and the debtor's obligation to make future payments, including dividends, and that the Trust own a majority of the voting shares of each such debtor. The Bankruptcy Court has considered the findings and conclusions contained in the Prior Confirmation Opinion and the record in these Chapter 11 Cases and determines that this requirement is satisfied here because the Trust shall be funded with the Trust Assets in accordance with Section 4.5 of the Plan, including, without limitation, the New Flintkote Stock. As the sole shareholder, the Trust will: (i) own all of the voting shares of Reorganized Flintkote, and (ii) hold all rights to receive dividends or other distributions on account of such stock, and therefore be entitled to receive "future payments, including dividends" from Reorganized Flintkote. To the extent applicable, Sections 524(g)(2)(B)(i)(II)-(III) are satisfied as to Mines as well because Mines will be merged with and into Flintkote on the Effective Date, and the Trust

40

will control and receive any assets of Mines that become available after the Effective Date. Plan § 4.5.2; 11 U.S.C. §§ 524(g)(2)(B)(i)(II)-(III).

### 3. Section 524(g)(2)(B)(i)(IV) – Use of Trust Assets

85. Section 524(g)(2)(B)(i)(IV) of the Bankruptcy Code requires that the Trust "use its assets to pay claims and demands." The Bankruptcy Court has considered the findings and conclusions contained in the Prior Confirmation Opinion and the record in these Chapter 11 Cases and determines that this requirement is satisfied here because the Trust will use its assets and income to pay Asbestos Personal Injury Claims and Asbestos Personal Injury Demands in accordance with the Trust Agreement and the Trust Distribution Procedures. Plan § 4.1.2(a).

### 4. Section 524(g)(2)(B)(ii)(I) – Likelihood of Future Demands

86. Section 524(g)(2)(B)(ii)(I) of the Bankruptcy Code requires a determination that the Debtors are likely to be subject to substantial future demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Third Party Injunction. The Bankruptcy Court has considered the findings and conclusions contained in the Prior Confirmation Opinion and the record in these Chapter 11 Cases and determines that this requirement is satisfied here. McMonagle Declaration, ¶ 8; Prior Confirmation Opinion at 41; Disclosure Statement at 29.[15]

---

[15] While Mines was sued in fewer prepetition asbestos personal injury lawsuits than Flintkote, in 98% of those suits, Flintkote was also named as a defendant and had historically defended Mines. Disclosure Statement (D.I. 3629) at 23-24. Thus, Mines' asbestos liabilities essentially derive from the asbestos fiber it provided to Flintkote, and is typically duplicative of asbestos liabilities of Flintkote.

### 5. Section 524(g)(2)(B)(ii)(II) – Indeterminate Nature of Future Demands

87.     Section 524(g)(2)(B)(ii)(II) of the Bankruptcy Code requires a determination that the actual amounts, numbers, and timing of future demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Third Party Injunction cannot be determined.  The Bankruptcy Court has considered the findings and conclusions contained in the Prior Confirmation Opinion and the record in these Chapter 11 Cases and determines that this requirement is satisfied here.  Prior Confirmation Opinion at 4-8, 32-41; Disclosure Statement at 29.

### 6. Section 524(g)(2)(B)(ii)(III) – Threat of Future Demands Pursued Outside Plan

88.     Section 524(g)(2)(B)(ii)(III) of the Bankruptcy Code requires a determination that pursuit of Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Third Party Injunction, the Insurance Entity Injunction (as applicable), and the Supplemental Settlement Bar Order (as applicable) outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Asbestos Personal Injury Claims and Asbestos Personal Injury Demands.  The Bankruptcy Court has considered the findings and conclusions contained in the Prior Confirmation Opinion and the record in these Chapter 11 Cases and determines that this requirement is satisfied here.  Prior Confirmation Opinion at 4-8, 32-41.

### 7. Section 524(g)(2)(B)(ii)(IV)(aa) – Description of Injunctions in Plan and Disclosure Statement

89.     Section 524(g)(2)(B)(ii)(IV)(aa) of the Bankruptcy Code requires a determination that the terms of the proposed injunction, including any provisions barring actions against third parties (including, for example, the Protected Parties), pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in conspicuous language in the Plan and the Disclosure Statement.

42

The Bankruptcy Court has considered the findings and conclusions contained in the Prior

Confirmation Opinion and the record in these Chapter 11 Cases and determines that this

requirement is satisfied here. Plan §§ 12.1, 12.3-12.4; Disclosure Statement § 6.7(d); Second

Supplemental Disclosure Document at 9-12.

8. **Section 524(g)(2)(B)(iii)(IV)(bb) – Acceptance of Plan by Classes Addressed by Trust**

90. Section 524(g)(2)(B)(iii)(IV)(bb) of the Bankruptcy Code requires that Class 7

and Class 8, which the Debtors designated as separate Classes of claimants whose Claims are to

be channeled to and addressed by the Trust, vote in favor of the Plan by at least 75% in number

of those voting. The Bankruptcy Court has considered the findings and conclusions contained in

the Prior Confirmation Opinion and the record in these Chapter 11 Cases and determines that this

requirement is satisfied here because, of the holders of Asbestos Personal Injury Claims in

Classes 7 and 8 who voted, over 94% and 99% of such holders in each, respectively, voted in

favor of the Plan—well in excess of the required supermajority. Plan §§ 3.2.7-3.2.8; Voting

Declaration, ¶ 38.[16]

9. **Section 524(g)(2)(B)(ii)(V) – Operation of Trust**

91. Section 524(g)(2)(B)(ii)(V) of the Bankruptcy Code requires that the Trust

operate through mechanisms such as structured, periodic, or supplemental payments, pro rata

distributions, matrices, or periodic review of estimates of the numbers and values of present

Asbestos Personal Injury Claims and Asbestos Personal Injury Demands, or other comparable

mechanisms, that provide reasonable assurance that the Trust will value, and be in a financial

position to pay, present Asbestos Personal Injury Claims and Asbestos Personal Injury Demands

---

[16] The claimants in Classes 7 and 8 voting in favor of the Plan represented approximately 99% in amount of voting Claims for each Class. Voting Declaration, ¶ 38.

that involve similar claims and demands in substantially the same manner. The Bankruptcy

Court has considered the findings and conclusions contained in the Prior Confirmation Opinion

and the record in these Chapter 11 Cases and determines that this requirement is satisfied here.

Plan § 4.1; Trust Distribution Procedures.

### 10. Section 524(g)(4)(A)(ii) – Identity of Protected Third Parties

92.     Section 524(g)(4)(A)(ii) of the Bankruptcy Code requires that third parties

receiving the benefit of the proposed injunctions be "identifiable from the terms of such

injunction (by name or as part of an identifiable group)." The Bankruptcy Court has considered

the findings and conclusions contained in the Prior Confirmation Opinion and the record in these

Chapter 11 Cases and determines that this requirement is satisfied here because the Protected

Parties are identified in the Plan "by name or as part of an identifiable group," which

identification is fully reproduced in ¶¶ 144-145 of this Confirmation Order. Plan §§ 1.1.110,

12.3.1; Plan Supplement, Exhibit 8.

93.     As further required by section 524(g)(4)(A)(ii) of the Bankruptcy Code, the

Protected Parties identified in or pursuant to the Plan are all third parties who are alleged to be

directly or indirectly liable for Asbestos Personal Injury Claims and/or Asbestos Personal Injury

Demands. More specifically, the Settling Asbestos Insurance Companies are identified as

Protected Parties in the Third Party Injunction because their respective alleged liability for

Asbestos Personal Injury Claims and/or Asbestos Personal Injury Demands arises out of their

provision of insurance to the Debtors. 11 U.S.C. § 524(g)(4)(A)(ii)(III). The Imperial Protected

Parties are identified as Protected Parties in the Third Party Injunction because of their respective

alleged liability for Asbestos Personal Injury Claims and/or Asbestos Personal Injury Demands,

arising out of their: (i) ownership of a financial interest, directly or indirectly, in the Debtors or

an affiliate or predecessor of the Debtors; (ii) involvement in the management of, or service as an

DOCS_DE:200917.1 28451/001

officer, director, or employee of the Debtors or a related party; or (iii) involvement in a transaction changing the corporate structure or other financial transaction affecting the financial condition of the Debtors or a related party.[17] 11 U.S.C. §§ 524(g)(2)(4)(A)(ii)(I), (II), and (IV); Thauvette Declaration, ¶ 2. Some of the Imperial Protected Parties may also have indemnification rights against Imperial for Claims relating to the Debtors' asbestos liabilities, such that a claim against them would amount to a claim against Imperial. Thauvette Declaration, ¶ 2.

94. In view of the substantial contributions being made by or on behalf of the Protected Parties, the extension of the Third Party Injunction and the Supplemental Bar Order (as applicable) to third parties is consistent with section 524(g)(4)(A)(ii) of the Bankruptcy Code, and is essential to the Plan and Flintkote's reorganization efforts. Accordingly, the Third Party Injunction and the Supplemental Bar Order (as applicable) are each authorized by section 524(g) of the Bankruptcy Code and shall be valid and enforceable against all entities it addresses.

**11. Section 524(g)(4)(B)(i) – Appointment of Legal Representative**

95. Section 524(g)(4)(B)(i) of the Bankruptcy Code requires the appointment of a legal representative for the purpose of representing individuals that might subsequently assert Asbestos Personal Injury Demands against the Debtors. The Bankruptcy Court has considered the findings and conclusions contained in the Prior Confirmation Opinion and the record in these Chapter 11 Cases and determines that this requirement is satisfied here because, as part of these proceedings, the Bankruptcy Court appointed James J. McMonagle as the Future Claimants

---

[17] Section 524(g)(4)(A)(iii) of the Bankruptcy Code defines a "related party" for purposes of Section 524(g)(4)(A) as "a past or present affiliate of the debtor" as well as "any entity that owned a financial interest in. . . the debtor, [or] a past or present affiliate of the debtor." 11 U.S.C. § 524(g)(4)(A)(iii). Flintkote is a "related party" of Mines under this definition, such that Imperial's actions with respect to Flintkote satisfies Section 524(g)(4)(A)(ii) for purposes of Mines.

Representative to represent individuals who might subsequently assert Asbestos Personal Injury Demands against the Debtors. 11 U.S.C. § 524(g)(4)(B)(i); Amended Order Appointing James J. McMonagle as Futures Representative (D.I. 1946). The Future Claimants Representative acted to ensure that future claimants were treated fairly and equitably in the process of developing the Plan and Plan Documents. McMonagle Declaration, ¶ 9.

**12. Section 524(g)(4)(B)(ii) – Injunctions Are Fair and Equitable**

96.     Section 524(g)(4)(B)(ii) requires a determination that the Third Party Injunction, the Insurance Entity Injunction (as applicable), and the Supplemental Settlement Bar Order (as applicable), and the protection each affords to the Protected Parties is fair and equitable with respect to holders of Asbestos Personal Injury Demands. The Bankruptcy Court has considered the Prior Confirmation Opinion, the Prior Confirmation Order, as well as the record in these Chapter 11 Cases, and concludes that this requirement is satisfied and that the inclusion of each Debtor, the Trust and/or other Protected Party in the Third Party Injunction, the Insurance Entity Injunction (as applicable), and the Supplemental Settlement Bar Order (as applicable) is fair and equitable with respect to holders of Asbestos Personal Injury Demands.

97.     Imperial has deposited the ITCAN Settlement Funds ($575 million) into escrow explicitly on behalf of itself and the other Imperial Protected Parties. ITCAN Settlement Agreement § D.1.a. Of that sum, the Plan Proponents anticipate that approximately $464 million will be transferred to the Trust. Gordon Declaration, ¶ 8. The remainder will be used to pay certain other negotiated amounts, including the Allowed DRL Fee Amount, as well as the 2% share of net proceeds due to Reorganized Flintkote under both the Prior Plan and the Plan. *Id.* The Asbestos Claimants Committee and Future Claimants Representative actively participated in the negotiations with Imperial and determined that the ITCAN Settlement Agreement represented an appropriate resolution from the perspective of current and future asbestos

46

creditors. McMonagle Declaration, ¶¶ 7, 10. Specifically, the identification of the Imperial Protected Parties as Protected Parties for purposes of the Third Party Injunction, the Supplemental Settlement Bar Order (as applicable) and the other protections provided to the Imperial Protected Parties under the Plan are "fair and equitable" in light of the Imperial Protected Parties' contribution of the ITCAN Settlement Funds, and such protections are otherwise necessary to obtain the contribution of the ITCAN Settlement Funds.

98.    In sum, the Trust will be funded by contributions consisting of: (i) the New Flintkote Stock; (ii) all Cash and instruments held by the Debtors as of the Effective Date other than the Reserve Cash; (iii) all Net ITCAN Settlement Funds; (iv) the Trust Causes of Action and any proceeds thereof; (v) Asbestos Insurance Actions; (vi) Asbestos Insurance Action Recoveries; (vii) the rights of the Debtors with respect to Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements and Claims thereunder; (viii) the Qualified Settlement Fund Proceeds; and (ix) any and all other funds, proceeds or other consideration otherwise contributed to the Trust pursuant to the Plan and/or this Confirmation Order or other order of the Bankruptcy Court. Plan §§ 1.1.127; 4.5. These contributions constitute substantial assets and a sufficient basis upon which to provide the Protected Parties with the protections afforded to them under the Plan and this Confirmation Order.

99.    In light of the benefits provided, or to be provided, to the Trust by or on behalf of each Protected Party, each of the Third Party Injunction, the Insurance Entity Injunction (as applicable), and the Supplemental Settlement Bar Order (as applicable) is fair and equitable with respect to the persons that might subsequently assert Asbestos Personal Injury Demands against any Protected Party.

### 13. Section 524(g)(3)(A) – District Court Approval

100.    Section 524(g)(3)(A) requires that the proposed section 524(g) injunction must be affirmed by the District Court. This requirement is satisfied here because affirmation of this Confirmation Order is specified as a condition precedent to the Effective Date of the Plan, and the Bankruptcy Court is recommending that the District Court so affirm. *See infra*, at ¶ 174; Plan § 9.2.1.

### L.    Assumption and Rejection of Executory Contracts

101.    The Bankruptcy Court has considered ¶¶ 56-57 of the Prior Confirmation Order, and finds that, as set forth in Section 5.1 of the Plan, and except as otherwise provided in Section 5.1 and in Section 12.8 of the Plan and the Plan Documents, all Executory Contracts to which the Debtors are a party and that have not been expressly assumed, or assumed and assigned, by the Debtors, or either of them, in accordance with section 365 of the Bankruptcy Code on or prior to the Confirmation Date shall, as of the Effective Date, be deemed to have been rejected by the Debtors. To the extent the Wellington Agreement constitutes an Executory Contract, such contract shall be assumed by the applicable Debtor(s) and assigned to the Trust. Prior Confirmation Order ¶ 56.

102.    As set forth in Section 5.2 of the Plan, and notwithstanding Section 5.1 of the Plan, all Asbestos Insurance Policies and Asbestos Insurance Settlement Agreements (other than the Wellington Agreement) entered into prior to the Petition Date shall be considered non-executory contracts and shall neither be assumed nor rejected by the Debtors. To the extent the Wellington Agreement does not constitute an Executory Contract, the Wellington Agreement shall neither be assumed nor rejected by the Debtors. Prior Confirmation Order ¶ 57.

48

## M. Claims Bar Dates and Other Claims Matters

### 1. Bar Date for Fee Claims

103. Pursuant to Section 14.1 of the Plan, all final requests for compensation or reimbursement of the fees of any Professional employed in the Chapter 11 Cases pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise, including the Professionals seeking compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and prior to and including the Effective Date in connection with the Chapter 11 Cases, pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the Debtors, the Asbestos Claimants Committee, or the Future Claimants Representative, and Claims for making a substantial contribution under sections 503(b)(3)(D) and/or 503(b)(4) of the Bankruptcy Code, shall be filed and served on Reorganized Flintkote and its counsel, and in accordance with the Compensation Procedures Order, not later than one hundred twenty (120) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court (the "Professional Fee Bar Date"). Any objections to a final Fee Claim must be filed no later than twenty-one (21) days after the filing of such Claim.

104. The terms of the Compensation Procedures Order shall govern the allowance and payment of any final Fee Claims submitted in accordance with Section 14.1 of the Plan and this Confirmation Order. The Fee Auditor appointed under the Compensation Procedures Order shall continue to act in this appointed capacity unless and until all final Fee Claims have been approved by order of the Bankruptcy Court, and the Debtors and Reorganized Flintkote, as the case may be, shall be responsible to pay the fees and expenses incurred by the Fee Auditor in rendering services prior to and after the Effective Date.

DOCS_DE:200917.1 28451/001

105.    If a Professional or other Entity (other than the Fee Auditor) does not submit a final request for payment of an Administrative Expense on account of services rendered to the Estates in accordance with the Compensation Procedures Order by the Professional Fee Bar Date, such Entity shall be forever barred from seeking payment of such Administrative Expense from Reorganized Flintkote or Mines, or any of the successors or assigns of either, or out of the property of any of them. .

106.    Reorganized Flintkote shall pay the entire Allowed DRL Fee Amount at one time, on the later of: (i) the Effective Date, or (ii) seven (7) days after the Allowed DRL Fee Amount is established by a Final Order in accordance with section 14.1.2 of the Plan.  Plan § 14.1.2.

## 2.    Bar Date for Rejection Damages Claims

107.    Pursuant to Section 5.3 of the Plan, if the rejection or deemed rejection by a Debtor of an Executory Contract results in damages to the other party or parties to such Executory Contract, a Claim for such damages shall be forever barred and shall not be enforceable against either Debtor or Reorganized Flintkote, or the properties of any of them, whether by way of setoff, recoupment, or otherwise, unless a Proof of Claim is filed with the Claims Agent and served upon counsel for the Plan Proponents by the earlier of: (i) thirty (30) days after the Effective Date, and (ii) thirty (30) days after entry of a Final Order rejecting an Executory Contract pursuant to a motion filed by the Debtors.

108.    The Plan constitutes due and proper notice to Entities that may assert a Claim for damages from the rejection of an Executory Contract of the bar date for filing a Proof of Claim in connection therewith.

DOCS_DE:200917.1 28451/001

**N. Actions in Furtherance of the Plan**

109.    Pursuant to sections 1123 and 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other state (collectively, the "Reorganization Effectuation Statutes"), without further action by the Bankruptcy Court or the stockholders or directors of either Debtor or Reorganized Flintkote, each of the Debtors and Reorganized Flintkote, as well as each of the Chief Executive Officer, President or any Vice President of either Debtor or Reorganized Flintkote (collectively, the "Responsible Officers"), is hereby authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, the Plan Documents, this Confirmation Order and the transactions contemplated thereby or hereby.

110.    To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders or directors of either of the Debtors or Reorganized Flintkote, this Confirmation Order shall, pursuant to sections 1123(a)(5) and 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the stockholders or directors, as the case may be, of the appropriate Debtor or Reorganized Flintkote.

111.    The approvals and authorizations specifically set forth in this Confirmation Order are non-exclusive and are not intended to limit the authority of either Debtor or Reorganized Flintkote or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, the Plan Documents, this Confirmation Order, the Merger, or the other transactions contemplated thereby or hereby.  In addition to the authority to execute

51

and deliver, adopt or amend, as the case may be, the contracts, instruments, releases and other agreements, including, without limitation, the Plan Documents, specifically granted in this Confirmation Order, each of the Debtors and Reorganized Flintkote is authorized and empowered, without further action in the Bankruptcy Court or further action or consent by its directors, trustees, or stockholders, to take any and all such actions as any of its respective Responsible Officers may determine are necessary or appropriate to implement, effectuate and consummate the Plan, the Plan Documents, this Confirmation Order, the Merger, the ITCAN Settlement Agreement, or the other transactions contemplated thereby or hereby.

112.    To the extent any approval of the Bankruptcy Court is required for any of the Plan Proponents to enter into any of the Plan Documents, or to take any actions thereunder or to consummate any of the transactions contemplated thereby, such approvals are hereby granted.

## 1.    Directors and Officers of Reorganized Flintkote

113.    The Bankruptcy Court has considered ¶ 67 of the Prior Confirmation Order, and hereby approves the appointment of the initial members of the Reorganized Flintkote Board of Directors, as set forth in Exhibit 10 to the Plan Supplement, as of and immediately following the Effective Date. The initial members are David Gordon, James McMonagle, and W. Howard Morris.

114.    The appointment of the initial officers of Reorganized Flintkote—David Gordon, Chief Executive Officer, and Don Oliver, Chief Financial Officer, as of and immediately following the Effective date, is hereby approved. Gordon Declaration, ¶ 19.

## 2.    Merger

115.    As set forth in section 10.3 of the Plan, on the Effective Date, pursuant to the Plan and the Merger Agreement, Mines shall be merged with and into Flintkote, the separate existence of Mines shall thereupon cease (*i.e.*, Mines shall be the "disappearing corporation" under the

Merger), and Flintkote, as the surviving corporation in the Merger, shall continue its corporate existence under the laws of the State of Delaware. Upon the completion of the Merger, all intercompany claims between and among Flintkote and Mines shall be deemed extinguished, and Flintkote shall emerge from bankruptcy as Reorganized Flintkote and shall operate in accordance with Reorganized Flintkote's Amended Charter Documents. Reorganized Flintkote shall perform, or cause to be performed, Mines' obligations under the Plan to pay or otherwise satisfy allowed Claims against Mines. In order to consummate the Merger, each of the Debtors shall (a) enter into the Merger Agreement, (b) file the requisite forms to effect the Merger under applicable non-bankruptcy law, and (c) take such other steps as may be necessary or advisable to effect the Merger.

## O.    Creation of Trust

116.    On the Effective Date, the Trust shall be created in accordance with the terms and conditions of the Plan and the Trust Agreement. The Trust and the Trustees thereof are authorized and empowered to receive the property to be transferred to the Trust pursuant to Section 4.5 of the Plan.

117.    Pursuant to the Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state laws governing corporations or other legal entities and section 1142(b) of the Bankruptcy Code, without further action by the Bankruptcy Court or the directors or stockholders of either Debtor or further notice to any Entities, Reorganized Flintkote is authorized and directed to execute, deliver and perform its obligations under the Trust Agreement and to execute, deliver, file, record and implement all such other contracts, instruments, agreements or documents and take all such other actions as any of the Responsible Officers may determine are necessary, appropriate or desirable in connection therewith. The Trust Agreement and the Trust Distribution Procedures, as in effect on the Effective Date, shall

be substantially in the forms attached as Exhibit 4 to the Plan Supplement and Exhibit B to the Plan, respectively.

### 1. Transfers of Certain Property to and Assumption of Certain Liabilities by the Trust

118. On the Effective Date, except as otherwise provided in the Plan, this Confirmation Order, or an order of this Bankruptcy Court in these Chapter 11 Cases, all right, title and interest in and to the Trust Assets and any proceeds or causes of action thereunder shall be automatically transferred and assigned to, and indefeasibly vested in, the Trust free and clear of all Claims, liens, encumbrances, and other interests of any Entity without any further action of any Entity.

119. During these Chapter 11 Cases, and with respect to the ITCAN Settlement Agreement, pursuant to this Order, the Bankruptcy Court has approved certain settlement agreements pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure that require the Trust to be bound by such agreements. Accordingly, the Trust shall be bound as provided in those agreements without any further action by the Court, the Trust, or any other Entity.

120. Pursuant to Section D.3.g of the ITCAN Settlement Agreement, the Trust need not comply with any reporting obligations imposed by any prior Bankruptcy Court order approving settlements of insurance shared with Imperial or its subsidiaries.

#### i. Funding of the Trust

121. The Debtors shall fund the Trust in accordance with Section 4.5 of the Plan.

#### ii. Transfer of Claims and Demands to the Trust

122. Subject to the terms and conditions of Article IV of the Plan, on the Effective Date, upon its creation, the Trust, in consideration of the property transferred thereto, and in furtherance of the purposes of the Trust and the Plan, shall assume the liabilities of the Debtors for all Asbestos Personal Injury Claims, including, but not limited to, Indirect Asbestos Personal

54

Injury Claims. This assumption shall not affect the existence of Asbestos Personal Injury Claims as debts of the Debtors, which debts are subject in all respects to the Injunctions.

### iii.    Assignment and Enforcement of Trust Causes of Action

123.    On the Effective Date, by virtue of the confirmation of the Plan, without further notice, action, or deed, the Trust Causes of Action shall be automatically transferred and assigned to, and indefeasibly vested in, the Trust, and the Trust shall thereby become the Estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Trust Causes of Action, with the right to enforce the Trust Causes of Action against any Entity in accordance with Sections 11.2 and 11.5 of the Plan.

124.    The transfer of Trust Causes of Action to the Trust, insofar as they relate to the ability to defend against or reduce the amount of Asbestos Personal Injury Claims, shall be considered the transfer of a non-exclusive right enabling the Trust to defend itself against asserted Asbestos Personal Injury Claims, which transfer shall not impair, affect, alter or modify the right of any Person, including without limitation, Reorganized Flintkote, an insurer or alleged insurer, or co-obligor or alleged co-obligor, sued on account of a present or future Asbestos Personal Injury Claim or Asbestos Personal Injury Demand against Flintkote or Mines, to assert each and every defense or basis for claim reduction such Person could have asserted had the Trust Causes of Action not been assigned to the Trust.  Plan § 11.2.

### iv.    Transfer and Assignment of the Asbestos Insurance Action Recoveries, Asbestos Insurance Actions, and Asbestos In-Place Coverage

125.    The Bankruptcy Court has considered ¶ 77 of the Prior Confirmation Order and finds that the anti-assignment provisions with respect to the: (i) Asbestos Insurance Actions, (ii) the Asbestos Insurance Action Recoveries, (iii) Asbestos Insurance Settlement Agreements attributable to any Asbestos Personal Injury Claims and entered into prior to the Petition Date,

55

(iv) the Asbestos In-Place Coverage, and (v) other rights or obligations with respect to the Asbestos Insurance Policies, to the Trust under the Plan or Plan Documents (including, but not limited to Asbestos Insurance Policies subscribed by LMC) are preempted pursuant to sections 524(g), 541(c)(1), 1123(a)(5)(B), and 1129(a)(1) of the Bankruptcy Code. Thus, the Assignment is authorized, and the insurance actions, recoveries, and policies are validly transferred to the Trust.

## 2. Institution and Maintenance of Legal and Other Proceedings

126. As of the Effective Date, without any further action of the Bankruptcy Court or any Entity, the Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust, including the Trust Causes of Action and the Asbestos Insurance Actions.

## 3. Appointment of Trustees

127. Pursuant to Section 4.2 of the Plan, the three (3) initial Trustees of the Trust shall be the persons identified in the Trust Agreement. Effective on the Effective Date, the initial Trustees shall serve as Trustees of the Trust in accordance with the terms of the Trust Agreement. The Trustees are James M. Klein, Lewis R. Sifford, and Daniel J. Stack. Each of the Trustees is deemed to be a "party in interest" in the Debtors' Chapter 11 Cases within the meaning of section 1109(b) of the Bankruptcy Code.

## 4. Appointment of TAC Members

128. The appointment of James Ferraro, Steve Baron, Alan Kellman, Perry Weitz, Steve Kazan, and David Lipman as the initial members of the TAC is hereby approved. Plan Supplement, Exhibit 3. Effective on the Effective Date, the initial members of the TAC shall serve as members of the TAC in accordance with the terms of the Trust Agreement.

DOCS_DE:200917.1 28451/001

## 5. Asbestos Claimants Committee and Future Claimants Representative

129.    In accordance with Section 11.7 of the Plan, the Future Claimants Representative and Asbestos Claimants Committee shall continue in their official capacity until the Effective Date.  The Debtors shall pay the reasonable fees and expenses incurred by the Future Claimants Representative and the Asbestos Claimants Committee through the Effective Date, in accordance with the Compensation Procedures Order and Section 14.1 of the Plan (but only to the extent such fees and expenses are not Trust Expenses, in which case those portions of such fees and expenses shall be paid as Trust Expenses in accordance with the Trust Agreement, with the remainder to be paid by the Debtors).

130.    As set forth in Section 11.7 of the Plan, after the Effective Date, the official capacities of the Future Claimants Representative and the Asbestos Claimants Committee in these Chapter 11 Cases shall be limited to having standing and capacity to (i) prosecute their pre-Effective Date intervention in any adversary proceedings; (ii) object to any proposed modification of the Plan; (iii) object to or defend the Fee Claims of Professionals employed by or on behalf of the Estates, or by or on behalf of members of the Asbestos Claimants Committee; (iv) participate in any appeals of this Confirmation Order; (v) participate as a party in interest in any proceeding involving section 524(g) of the Bankruptcy Code; and (vi) participate as a party in interest in any proceeding relating to the Trust, and the Future Claimants Representative and the members of the Asbestos Claimants Committee shall be released and discharged from all other authority, duties, responsibilities, liabilities and obligations involving these Chapter 11 Cases.  Upon the closing of these Chapter 11 Cases, the Asbestos Claimants Committee shall be dissolved.  After the Effective Date, in addition to the standing and capacity to engage in the activities designated in subparts (i) through (vi) above, the Future Claimants Representative shall have the rights, duties and responsibilities set forth in the Trust Agreement.  Reorganized

Flintkote shall pay the reasonable fees and expenses incurred by the Future Claimants Representative and the Asbestos Claimants Committee relating to any post-Effective Date activities authorized hereunder (but only to the extent such fees and expenses are not Trust Expenses, in which case those portions of such fees and expenses shall be paid as Trust Expenses in accordance with the Trust Agreement, with the remainder to be paid by Reorganized Flintkote). Nothing in Section 11.7 of the Plan or in this Confirmation Order shall limit or otherwise affect the rights of the United States Trustee under section 502 of the Bankruptcy Code or otherwise to object to Claims or requests for Allowance of Fee Claims or other Administrative Expenses.

### 6. Indemnity Obligations of the Trust

131. The Trust shall be bound by the indemnity obligations set forth in the Plan and the Trust Documents, including, without limitation, those indemnity obligations set forth in Section 4.11 of the Plan and Section F of the ITCAN Settlement Agreement.

### P. Release, Exculpation and Indemnification Provisions

132. The Bankruptcy Court has considered ¶¶ 90-106 of the Prior Confirmation Order, as well as the record in these Chapter 11 Cases, and concludes that each of the release, exculpation and indemnification provisions set forth in the Plan (including, without limitation, Sections 10.7.1, 12.2, 12.7, and 12.9 of the Plan) is: (i) supported by good and valuable consideration, the adequacy of which is hereby confirmed; (ii) fair, equitable, and reasonable; (iii) supported by the record of these Chapter 11 Cases; (iv) in the best interests of the Debtors, their Estates, and the Holders of Claims against and Equity Interests in the Debtors; and (v) hereby approved in all respects, is incorporated herein in its entirety, is so ordered and shall be immediately effective on the Effective Date of the Plan without further action or notice by the Bankruptcy Court, any of the parties to such releases or any other party.

DOCS_DE:200917.1 28451/001

### 1. Releases by the Debtors and Estates

133. As previously approved in ¶ 91 of the Prior Confirmation Order, and as set forth in Section 12.2.1(a) of the Plan, except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date, the Debtors and Reorganized Flintkote on their own behalf and as representatives of their respective Estates, release unconditionally, and are hereby deemed to release unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place before the Petition Date in connection with the Debtors or any of them, or their respective property.

134. As set forth in Section 12.2.1(b) of the Plan, on the Effective Date, the Plan Proponents, on their own behalf and as representatives of the Debtors' Estates, shall irrevocably and unconditionally, and are hereby deemed to irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge each and all of the Imperial Protected Parties from the Imperial Released Claims.

135. The payment of the ITCAN Settlement Funds constitutes, among other things, a return of funds transferred by Flintkote by way of dividend to or for the benefit of Imperial, and the Debtors and their Estates hold the exclusive right to bring or assert and to settle or release the Imperial Released Claims; consequently, any Imperial Released Claims and any Derivative Estate Claims shall be finally and completely settled, satisfied, and extinguished upon the payment of ITCAN Settlement Funds pursuant to the ITCAN Settlement Agreement.

## 2.    Releases by Holders of Claims

136.    As previously approved in ¶ 92 of the Prior Confirmation Order, and as set forth in Section 12.2.2 of the Plan, except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date, each holder of a Claim that submits a Ballot and elects to consent to the releases by checking the appropriate box on the Ballot, shall be deemed to have unconditionally released each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place before the Petition Date in connection with the Debtors or either of them, or their respective property.

## 3.    Exculpation

137.    As previously approved in ¶ 93 of the Prior Confirmation Order, and as set forth in Section 12.7 of the Plan, none of the Debtors, Reorganized Flintkote, the members of the Asbestos Claimants Committee, the Future Claimants Representative nor any of their respective officers, directors and employees, members, agents, attorneys, accountants, financial advisors or restructuring professionals, nor any other Professional employed by any of them, shall have or incur any liability to any Person or Entity for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases; the negotiation of the Plan or Prior Plan, the Disclosure Statement, the Plan Documents, the releases and Injunctions, the ITCAN Settlement Agreement; the pursuit of confirmation of the Plan; the administration, consummation and implementation of the Plan or the property to be distributed under the Plan; or the management or operation of the Debtors (except for any liability that results primarily from such Person's or Entity's gross

negligence, bad faith or willful misconduct); *provided, however*, that this exculpation provision shall not apply to (i) L. Tersigni Consulting, P.C. and (ii) Asbestos Insurer Coverage Defenses. In all respects, each and all of such Persons, firms and Entities shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and the administration of each of them.

**Q.    Discharge and Injunctions and Related Matters**

    **1.    Discharge of Claims**

        **i.    Discharge of Claims Against the Debtors**

138.    The Bankruptcy Court has considered ¶¶ 94-96 of the Prior Confirmation Order and the record of these Chapter 11 Cases and concludes that as of the Effective Date, the distributions and rights afforded under the Plan and the treatment of Claims against and Equity Interests in the Debtors under the Plan shall be in exchange for, and in complete discharge of, all Claims and Demands of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date. Accordingly, confirmation of the Plan shall, as of the Effective Date, (i) discharge the Debtors from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g) or 502(i) of the Bankruptcy Code, whether or not (x) a proof of claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (y) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code (or is otherwise resolved), or (z) the holder of a Claim based on such debt has accepted the Plan; and (ii) satisfy, terminate or cancel all Equity Interests and other rights of equity security holders in the Debtors, except as otherwise provided in the Plan.

139.    All Entities shall be precluded and forever barred from asserting against the Debtors and Reorganized Flintkote, or their assets, properties, or interests in property any other or further Claims or Demands based upon any act or omission, transaction, or other activity,

event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in the Plan.

### ii.   Disallowed Claims and Disallowed Equity Interests

140.   The Bankruptcy Court has considered ¶ 98 of the Prior Confirmation Order and the record of these Chapter 11 Cases, and concludes that, as set forth in Section 12.6 of the Plan, on and after the Effective Date, the Debtors and Reorganized Flintkote shall have no liability or obligation on a disallowed Claim or a disallowed Equity Interest, and any order disallowing a Claim or an Equity Interest which is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Rule 3008 of the Bankruptcy Rules shall, nevertheless, become and be deemed to be a Final Order on the Effective Date.  This Confirmation Order, except as otherwise provided herein, shall constitute an order: (a) in relation to each Debtor, disallowing all Claims (other than Asbestos Personal Injury Claims) and Equity Interests to the extent such Claims and Equity Interests are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Equity Interests, and Claims for unmatured interest; and (b) in relation to each Debtor, disallowing or subordinating to all other Claims, as the case may be, any Claims for penalties, punitive damages or any other damages not constituting compensatory damages.

### 2.   No Successor Liability

141.   As set forth in Section 12.8 of the Plan, except as otherwise expressly provided in the Plan, Reorganized Flintkote does not, pursuant to the Plan, the Merger Agreement or otherwise, assume, agree to perform, pay or indemnify any Entity or Person, or otherwise have any responsibility for any liabilities or obligations of the Debtors relating to or arising out of the

operations of or assets of the Debtors, whether arising prior to, on or after the Effective Date.

Neither the Plan Proponents, Reorganized Flintkote, nor the Trust is, or shall be deemed to be, a

successor to either of the Debtors by reason of any theory of law or equity (except as provided in

Article IV of the Plan, and none shall have any successor or transferee liability of any kind or

character; *provided, however*, Reorganized Flintkote and the Trust shall assume and remain

liable for their respective obligations specified in the Plan, the ITCAN Settlement Agreement,

and this Confirmation Order.

### 3. Discharge Injunction

142.    The Bankruptcy Court has considered ¶¶ 99-100 of the Prior Confirmation Order

and the record in these Chapter 11 Cases and concludes that confirmation of the Plan shall afford

each Debtor a discharge under section 1141(d)(1) of the Bankruptcy Code, and that the Plan

provides for the following permanent injunction, as set forth in Section 12.1.2 of the Plan, which

is hereby approved and authorized in all respects, and which shall take effect as of the Effective

Date:

> **(a)      Except as provided in the Plan or this Confirmation Order, as of the Effective Date, all Persons that hold, have held, or may hold a Claim, Demand or other debt or liability that is discharged, or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims, debts or liabilities, or terminated Equity Interests or rights: (i) commencing or continuing any action or other proceeding against the Debtors, Reorganized Flintkote, the Trust or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Debtors, Reorganized Flintkote, the Trust or their respective property; (iii) creating, perfecting or enforcing any Lien or Encumbrance against the Debtors, Reorganized Flintkote, the Trust or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Debtors, Reorganized Flintkote, the Trust or their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of the Plan.**

*(b) Except as provided in the Plan or this Confirmation Order, as of the Effective Date all Entities that hold, have held, or may hold a Claim, Demand, or other debt, right, cause of action or liability that is released pursuant to Section 12.2 of the Plan are permanently enjoined from taking any of the following actions on account of or based upon such released Claims, Demands, debts, rights, causes of action or liabilities: (i) commencing or continuing any action or other proceeding against the Released Parties or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Released Parties or their respective property; (iii) creating, perfecting or enforcing any Lien or Encumbrance against the Released Parties or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Released Parties or against their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of the Plan.*

**4.    Third Party Injunction**

143.    The Bankruptcy Court has considered ¶ 101 of the Prior Confirmation Order and the record in these Chapter 11 Cases and concludes that, as set forth in Section 12.3 of the Plan, in addition to conduct otherwise enjoined under the Bankruptcy Code, and to supplement the injunctive effect of the Discharge Injunction, and pursuant to section 524(g) and 105(a) of the Bankruptcy Code, the Plan provides for the following permanent injunction, as set forth in Section 12.3.1 of the Plan, which is hereby approved and authorized in all respects, and which shall take effect as of the Effective Date:

*(a)    Terms.  In order to preserve and promote the settlements contemplated by and provided for in the Plan and agreements previously or concurrently approved by the Bankruptcy Court, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 524(g) of the Bankruptcy Code, all Entities which have held or asserted, which hold or assert or which may in the future hold or assert any claim, demand or cause of action (including, but not limited to, any Asbestos Personal Injury Claim or Asbestos Personal Injury Demand, or any claim or demand for or respecting any Trust Expense) directly or indirectly against the Protected Parties (or any of them) (i) based upon, attributable to, or arising out of any Asbestos Personal Injury Claim or Asbestos Personal Injury Demand, whenever and wherever arising or asserted, whether in the United States of America, or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, including, but not limited to, theories of alter ego,*

64

*veil piercing, and successor liability, or (ii) as a result of the conduct of, claims against, or demands on either Debtor to the extent such alleged liability of such Protected Party arises by reason of (I) the Protected Party's ownership of a financial interest in either Debtor, a past or present affiliate of either Debtor, or a predecessor in interest of either Debtor; (II) the Protected Party's involvement in the management of either Debtor or a predecessor in interest of either Debtor, or service as an officer, director or employee of either Debtor or a related party; (III) the Protected Party's provision of insurance to either Debtor or a related party; or (IV) the Protected Party's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of either Debtor or a related party, including but not limited to—(aa) involvement in providing financing (debt or equity), or advice to an entity involved in such a transaction; or (bb) acquiring or selling a financial interest in an entity as part of such a transaction (collectively, a "Third Party Claim"), shall be permanently stayed, restrained and enjoined, from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments or recovery with respect to any such Third Party Claim, including, but not limited to:*

> *(i)      commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Third Party Claim against any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim;*

> *(ii)      enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim;*

> *(iii)      creating, perfecting or enforcing any Lien of any kind against any Protected Party or the property of any Protected Party on the basis of such Third Party Claim;*

> *(iv)      except as otherwise provided in the Plan, asserting, implementing or effectuating any setoff, right of subrogation or contribution or recoupment of any kind against any obligation due any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim; and*

> *(v)      taking any act relating to such Third Party Claim in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Documents or the Trust Documents.*

*(b)      Reservations.  Notwithstanding anything to the contrary in Section 12.3.1(a) of the Plan, this Third Party Injunction shall not impair:*

*(i)      the rights of holders of Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims solely against the Trust or otherwise in accordance with the Trust Distribution Procedures; or*

*(ii)      the rights of Entities to assert any Claim, debt, obligation or liability for payment of Trust Expenses solely against the Trust or otherwise in accordance with the Trust Distribution Procedures.*

*(c)      Bankruptcy Rule 3016 Compliance.  The Plan Proponents' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.*

*(d)      If a non-Settling Asbestos Insurance Company asserts that it has rights of contribution, indemnity, reimbursement, subrogation or other similar claims (collectively, "Contribution Claims") against a Settling Asbestos Insurance Company, (i) such Contribution Claims may be asserted as a defense or counterclaim against the Trust or Reorganized Flintkote (as applicable) in any Asbestos Insurance Action involving such non-Settling Asbestos Insurance Company, and the Trust or Reorganized Flintkote (as applicable) may assert the legal or equitable rights, if any of the Settling Asbestos Insurance Company, and (ii) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such non-Settling Asbestos Insurance Company to the Trust or Reorganized Flintkote (as applicable) shall be reduced by the amount of such Contribution Claims.*

*(e)      Any Imperial Protected Party may enforce the Third Party Injunction as a defense to any Claim brought against such Imperial Protected Party that is enjoined under the Plan as to such Imperial Protected Party and may seek to enforce such injunction in a court of competent jurisdiction, subject to the terms of the ITCAN Settlement Agreement.*

144.      Section 12.3.1 of the Plan contemplates that, in addition to protecting the Debtors and Reorganized Flintkote, the Third Party Injunction will be extended to protect certain third parties (together with the Debtors and Reorganized Flintkote, the "Protected Parties").  Plan § 12.3.1.  Section 1.1.110 of the Plan identifies these non-Debtor Protected Parties as follows:

- the Imperial Protected Parties;[18]

---

[18] Section 1.1.74 of the Plan defines the "Imperial Protected Parties" as consisting of Imperial Corporate Parties (Plan § 1.1.72), Imperial Affiliated Parties (Plan § 1.1.71), and Imperial Indemnitees (Plan § 1.1.73).

DOCS_DE:200917.1 28451/001

- any Entity, except for the Trust, that, pursuant to the Plan or otherwise, after the Effective Date, becomes a direct or indirect transferee of, or successor to, Flintkote, Reorganized Flintkote, or any of their respective assets (but only to the extent that liability is asserted to exist as a result of its becoming such a transferee or successor);

- each Settling Asbestos Insurance Company but only to the extent specified in this Confirmation Order or designated as a Protected Party by a subsequent order of the District Court pursuant to Section 13.4 of the Plan; and

- each Entity who contributes funds, proceeds or other consideration to or for the benefit of the Trust, which is designated with the consent of the Asbestos Claimants Committee and the Future Claimants Representative in this Confirmation Order to be a Protected Party.

Plan § 1.1.110(c)-(f).

145.    As the Bankruptcy Court previously determined in ¶ 102 of the Prior Confirmation Order, certain Asbestos Insurance Companies have entered into settlement agreements with the Debtors, which have been approved by the Bankruptcy Court by Final Order. No ruling, proceeding, or other matter in connection with the Plan or the Chapter 11 Cases will impair, alter, or modify the rights and obligations under any such settlement agreements. Pursuant to those settlement agreements, certain Asbestos Insurance Companies have been identified as Settling Asbestos Insurance Companies in the Plan Supplement and, subject to and to the extent of the inclusion of such parties in this Confirmation Order, are entitled to all rights, protections, and benefits provided to Settling Asbestos Insurance Companies pursuant to the Plan. For purposes of the protections and benefits set forth in the Third Party Injunction, the following Entities are named as Settling Asbestos Insurance Companies in Exhibit 8 to the Plan Supplement:

- "McKinley" as defined in the "Settlement Agreement, Mutual Release and Policies Buyback" approved by the Order Approving Compromise and Settlement Among Debtors The Flintkote Company and Flintkote Mines Limited and Mt. McKinley Insurance Company and Everest Reinsurance Company (D.I. 1155), to the extent of any entities contained in such definition at the time such Order was entered;

- "Everest" as defined in the "Settlement Agreement, Mutual Release and Policies Buyback" approved by the Order Approving Compromise and Settlement Among Debtors The Flintkote Company and Flintkote Mines Limited and Mt. McKinley Insurance Company and Everest Reinsurance Company (D.I. 1155), to the extent of any entities contained in such definition at the time such Order was entered;

- "Harper" as defined in the "Settlement Agreement and Release" approved by the Order Approving Settlement Agreement and Release with Harper Insurance Limited (D.I. 1819, 1822), to the extent of any entities contained in such definition at the time such Order was entered;

- Century Indemnity Company (successor to both (i) CCI Insurance Company, successor to Insurance Company of North America and (ii) CIGNA Specialty Insurance Company f/k/a California Union Insurance Company), Central National Insurance Company of Omaha (with respect to policies issued through Cravens, Dargan & Co., Pacific Coast, as managing general agent), ACE INA Insurance Company f/k/a INA Insurance Company of Canada, ACE American Insurance Company f/k/a Cigna Insurance Company, and the "Settling Insurer Releasees" as defined in the "Settlement Agreement and Release By and Between The Flintkote Company, Century Indemnity Company, and Other Signatory Insurers" approved by the Order Approving Settlement with Certain Settling Insurers (D.I. 2039), to the extent of any entities contained in such definition at the time such Order was entered;

- Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and the "Liberty Mutual Releasees" as defined in the "Settlement Agreement and Release" approved by the Order Authorizing and Approving Settlement Agreement and Release Between Debtors and Liberty Mutual Insurance Company (D.I. 2038), as subsequently modified, to the extent of any entities contained in such definition at the time such Order was entered;

- "E&A" and "E&A Releasees" as such terms are defined in the "Settlement Agreement and Release By and Between The Flintkote Company and Flintkote Mines Limited and English & American Insurance Company, Limited" approved by the Order Approving Settlement with English & American Insurance Company, Limited (D.I. 2845), to the extent of any entities contained in such definition at the time such Order was entered;

- "Highlands" as defined in the "Release and Settlement Agreement" approved by the Order Approving Settlement with Highlands Insurance Company, in Receivership, By and Through its Special Deputy Receiver, Prime Tempus Inc. (D.I. 2846), to the extent of any entities contained in such definition at the time such Order was entered;

- "Certain London Companies" as defined in the "Confidential Settlement and Policy Buyback Agreement and Release" approved by the Order Authorizing and Approving Settlement and Policy Buyback Agreement Between Debtors and Certain London Companies (D.I. 2903), to the extent of any entities contained in such definition at the time such Order was entered;

68

- "Settling Insurers" as defined in the "Settlement Agreement and Release By and Between The Flintkote Companies and National Union Fire Insurance Company of Pittsburgh PA, Granite State Insurance Company, Lexington Insurance Company, and La Societe Anonyme Union Atlantique De Reassurances" approved by the Order Approving Settlement Agreement and Release By and Between The Flintkote Companies and National Union Fire Insurance Company of Pittsburgh PA; Granite State Insurance Company; Lexington Insurance Company and La Societe Anonyme Union Atlantique De Reassurances" (D.I. 3000), to the extent of any entities contained in such definition at the time such Order was entered;

- "Settling Insurer" as defined in the "Settlement Agreement and Release By and Between the Flintkote Companies and American Home Assurance Company" approved by the Order Approving Settlement Agreement and Release By and Between the Flintkote Companies and American Home Assurance Company (D.I. 3156), to the extent of any entities contained in such definition at the time such Order was entered;

- AIG Commercial Insurance Company of Canada solely in its capacity as reinsurer, on an assumption basis, of American Home Assurance Company;

- Fireman's Fund Insurance Company, Fireman's Fund Indemnity Company, and Associated Indemnity Corporation;

- "OIC" as defined in the "Settlement Agreement and Release By and Between The Flintkote Company and Flintkote Mines Limited and OIC Run-Off Limited" approved by the Order Approving Settlement with OIC Run-Off Limited (D.I. 4545), to the extent of any entities contained in such definition at the time such Order was entered;

- "CCC" as defined in the "Settlement Agreement and Release By and Between The Flintkote Companies, On the One Hand, and Continental Casualty Company, On the Other Hand" approved by the Order Approving Settlement Agreement and Release By and Between The Flintkote Companies, On the One Hand, and Continental Casualty Company, On the Other Hand (D.I. 4052), to the extent of any entities contained in such definition at the time such Order was entered;

- "LGA" as defined in the "Settlement Agreement and Release By and Between The Flintkote Companies, On the One Hand, and London Guarantee and Accident Company of New York, On the Other Hand" approved by the Order Approving Settlement Agreement and Release By and Between The Flintkote Companies, On the One Hand, and London Guarantee and Accident Company of New York, On the Other Hand (D.I. 4053), to the extent of any entities contained in such definition at the time such Order was entered;

DOCS_DE:200917.1 28451/001

- "Aviva" as defined in the "Settlement Agreement and Release By and Between The Flintkote Companies and Aviva Insurance Company of Canada" approved by the Order Approving Settlement Agreement and Release By and Between The Flintkote Companies and Aviva Insurance Company of Canada (D.I. 5173), to the extent of any entities contained in such definition at the time such Order was entered;

- "Phoenix" as defined in the "Settlement and Policy Buyback Agreement and Release by and between The Flintkote Company and Flintkote Mines and Phoenix" approved by the Order Authorizing and Approving Settlement and Policy Buyback Agreement Between Debtors and Phoenix (D.I. 5274), to the extent of any entities contained in such definition at the time such Order was entered;

- "Brittany" as defined in the "Settlement and Policy Buyback Agreement and Release" approved by the Order Authorizing and Approving Settlement and Policy Buyback Agreement and Release Between Debtors and Brittany Insurance Company Ltd. (D.I. 6114), to the extent of any entities contained in such definition at the time such Order was entered; and

- "RiverStone" as defined in the "Settlement and Policy Buyback Agreement and Release" approved by the Order Authorizing And Approving Settlement And Policy Buyback Agreement Between Debtors And RiverStone (D.I. 7007), to the extent of any entities contained in such definition at the time such Order was entered; and

- "Travelers Releasees" as defined in the "Settlement Agreement, Policy Buyback and Mutual Release by and among The Flintkote Company, Flintkote Mines Limited, and Travelers Casualty and Surety Company" approved by the Order Approving Settlement Agreement, Policy Buyback, and Mutual Release between Debtors and Travelers (D.I. 8898), to the extent of any entities contained in such definition at the time such Order was entered.

146. As set forth in section 13.4 of the Plan, the District Court shall, without regard to the amount in controversy, retain exclusive jurisdiction after entry of the Affirmation Order to hear and determine any motion to extend the Third Party Injunction to an Asbestos Insurance Company, and shall be deemed to have withdrawn the reference to the Bankruptcy Court for such purpose.

DOCS_DE:200917.1 28451/001

**5.    Insurance Entity Injunction**

147.    The Bankruptcy Court has considered ¶ 104 of the Prior Confirmation Order and

the record in these Chapter 11 Cases and concluded that, in addition to conduct otherwise

enjoined under the Bankruptcy Code, the Plan provides for the following injunction, as set forth

in Section 12.3.2 of the Plan pursuant to the exercise of the equitable jurisdiction and power of

this Bankruptcy Court under Section 105(a) of the Bankruptcy Code, which was approved in the

Prior Confirmation Order and is hereby approved and authorized in all respects and which shall

take effect as of the Effective Date:

*(a)    Purpose. In order to protect the Trust and to preserve the Trust Assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court, the Bankruptcy Court shall issue the Insurance Entity Injunction; provided, however, that the Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Company, and no Asbestos Insurance Company is a third-party beneficiary of the Insurance Entity Injunction, except as otherwise specifically provided in any Asbestos Insurance Settlement Agreement.*

*(b)    Terms Regarding Claims Against Asbestos Insurance Companies. Subject to the provisions of Sections 12.3.1 and 12.3.2(a) of the Plan, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any claim, demand or cause of action (including any Asbestos Personal Injury Claim or any claim or demand for or respecting any Trust Expense) against any Asbestos Insurance Company based upon, attributable to, arising out of, or in any way connected with any such Asbestos Personal Injury Claim, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim, demand, or cause of action including, without limitation:*

*(i)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such claim, demand, or cause of action against any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such claim, demand, or cause of action;*

71

*(ii)    enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such claim, demand, or cause of action;*

*(iii)    creating, perfecting, or enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Insurance Company, or the property of any Asbestos Insurance Company, with respect to any such claim, demand, or cause of action; and*

*(iv)    except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such claim, demand or cause of action;*

*provided, however, that (a) the injunction set forth in Section 12.3.2(b) of the Plan shall not impair in any way any (i) actions brought by the Trust and/or Reorganized Flintkote against any Asbestos Insurance Company and (ii) the rights of any co-insured of the Debtors (x) with respect to any Asbestos Insurance Policy or Asbestos Insurance Settlement Agreement or against any Asbestos Insurance Company and (y) as specified under any Final Order of the Bankruptcy Court approving an Asbestos Insurance Settlement Agreement; and (b) the Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction set forth in Section 12.3.2(b) of the Plan with respect to any Asbestos Insurance Company upon express written notice to such Asbestos Insurance Company, except that the Trust shall not have any authority to terminate, reduce or limit the scope of the injunction herein with respect to any Settling Asbestos Insurance Company so long as, but only to the extent that, such Settling Asbestos Insurance Company complies fully with its obligations under any applicable Asbestos Insurance Settlement Agreement.*

*(c)    Reservations.  Notwithstanding anything to the contrary above, this Insurance Entity Injunction shall not enjoin:*

*(i)    the rights of Entities to the treatment accorded them under the Plan, as applicable, including the rights of holders of Asbestos Personal Injury Claims to assert such Claims, as applicable, in accordance with the Trust Distribution Procedures;*

*(ii)    the rights of Entities to assert any claim, debt, obligation, cause of action or liability for payment of Trust Expenses against the Trust;*

*(iii)    the rights of the Trust (or Reorganized Flintkote, in accordance with the Plan) to prosecute any action based on or arising from the Asbestos Insurance Policies;*

*(iv)    the rights of the Trust (or Reorganized Flintkote, in accordance with the Plan) to assert any claim, debt, obligation, cause of action or liability for payment against an Asbestos Insurance Company based on or arising from the Asbestos Insurance Policies or Asbestos Insurance Settlement Agreements; and*

*(v)    the rights of any Asbestos Insurance Company to assert any claim, debt, obligation, cause of action or liability for payment against any other Asbestos Insurance Company that is not a Settling Asbestos Insurance Company, or as otherwise specifically provided in any Asbestos Insurance Settlement Agreement.*

**6.    Supplemental Settlement Bar Order**

148.    As set forth in Section 12.4 of the Plan, to preserve and promote the ITCAN

Settlement Agreement that is incorporated into the Plan and pursuant to the exercise of the

equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy

Code, the Plan provides for the following permanent injunction, which is hereby approved and

authorized in all respects, and which shall take effect as of the Effective Date:

*(a)    Terms.  All Entities which have held or asserted, which hold or assert or which may in the future hold or assert any claim, demand or cause of action (including, but not limited to, any Asbestos Personal Injury Claim or Asbestos Personal Injury Demand, or any claim or demand for or respecting any Trust Expense) directly or indirectly against the Imperial Protected Parties (or any of them) shall be permanently stayed, restrained and enjoined from pursuing now, or at any time in the future, any Imperial Released Claims and any claims or causes of action, alleging or relying on any legal or equitable theory that is premised or based, in whole or in part, upon Imperial Released Claims (the "Derivative Estate Claims").*

*(b)    Reservations.  Nothing in Section 12.2.1 or 12.4 of the Plan shall be construed to release, limit or bar any direct, personal and non-derivative claim which may be asserted against any Imperial Protected Party by creditors in their individual capacity and which is outside the scope of what may be settled or released by the Debtors under applicable law.*

*(c)     Any Imperial Protected Party may enforce the Supplemental Settlement Bar Order as a defense to any Claim brought against such Imperial Protected Party that is enjoined under the Plan as to such Imperial Protected Party and may seek to enforce such injunction in a court of competent jurisdiction, subject to the terms of the ITCAN Settlement Agreement.*

149.    The Bankruptcy Court has subject matter jurisdiction and authority to issue the Supplemental Settlement Bar Order as to both Imperial Released Claims and Derivative Estate Claims.

150.    The Imperial Protected Parties shall be expressly permitted to enforce the Third Party Injunction and the Supplemental Settlement Bar Order contained in the Plan and the ITCAN Settlement Agreement Settlement if any Entity attempts to bring against any Imperial Protected Party any claim that is enjoined as to such party under the Plan, which rights shall include seeking court assistance in the enforcement of the injunction; *provided, however*, if any Imperial Protected Party seeks indemnification pursuant to Section F.1 of the ITCAN Settlement Agreement from the Trust for any Damages (as defined in Section F.1) incurred as a result of the enforcement of the Third Party Injunction and the Supplemental Settlement Bar Order, then the procedures set forth in Section F.2 of the ITCAN Settlement Agreement shall govern.

**7.     Terms of Certain Injunctions and Automatic Stay**

**i.     Injunctions and/or Automatic Stays in Existence Immediately Prior to Confirmation**

151.    All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases, whether pursuant to Sections 105 or 362 of the Bankruptcy Code or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the injunctions set forth in the Plan become effective, and thereafter if so provided by the Plan, this Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Debtors or the Plan

74

Proponents, acting together, may seek such further orders as they may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

### ii. Injunctions Provided for in the Plan

152. Each of the injunctions provided for in the Plan and described above in this Confirmation Order shall become effective on the Effective Date and shall continue in effect in accordance with their terms at all times thereafter unless otherwise provided by the Plan.

## R. Miscellaneous

### 1. Exemptions from Taxation

153. Pursuant to section 1146 of the Bankruptcy Code and Section 14.10 of the Plan, to the fullest extent permitted by law, no stamp tax, transfer tax, filing fee, sales or use tax or other similar tax shall be imposed or assessed by any taxing authority on account of (i) the Merger; (ii) the issuance, transfer, or exchange of any securities issued under the Plan; (iii) the transfer of any assets or property pursuant to the Plan; (iv) the making or delivery of an instrument of transfer under the Plan; or (v) the termination or extinguishment of any Equity Interests. The appropriate state or local government officials or agents shall be directed to forego the collection of any such tax and to accept for filing or recordation of any of the foregoing instruments or other documents without the payment of any such tax.

### 2. Exemptions from Securities Law

154. The offer, issuance, distribution, transfer or exchange of New Flintkote Stock pursuant to the Plan shall be, and shall be deemed to be, exempt from registration under any applicable federal or state securities laws to the fullest extent permissible under applicable non-bankruptcy law and under bankruptcy law, including, without limitation, section 1145(a) of the Bankruptcy Code.

DOCS_DE:200917.1 28451/001

### 3. Distribution Record Date

155.    The Distribution Record Date for purposes of determining the holders of Allowed Claims that are entitled to distributions that are required to be made under the Plan on the Effective Date or as otherwise provided under the Plan shall be the date this Confirmation Order is entered on the docket in the Chapter 11 Cases by the clerk of the Bankruptcy Court. As of the close of business on the Distribution Record Date, the various transfer and claims registers for each of the Classes of Claims as maintained by the Debtors or their agents shall be deemed closed. As set forth in Section 6.6 of the Plan, in the event that the holder of any Claim shall transfer such Claim on and after the Distribution Record Date, it shall immediately advise the Disbursing Agent, or the Trust (to the extent it pertains to an Asbestos Personal Injury Claim), in writing of such transfer. The Disbursing Agent or the Trust, as the case may be, shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until written notice of a transfer has been actually received by the Disbursing Agent or the Trust. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan, and, except as provided in a notice of transfer, the Disbursing Agent or the Trust, as the case may be, shall be entitled to assume conclusively that the transferee named in any notice of transfer shall thereafter be vested with all rights and powers of the transferor of such Claim.

### 4. Delivery of Documents

156.    Pursuant to section 1142 of the Bankruptcy Code, all Entities holding Claims against or Equity Interests in the Debtors or collateral pledged as security for any Claims against the Debtors that are treated under the Plan shall be, and they hereby are, directed to execute, deliver, file or record any document, and to take any action necessary, including, without limitation, cancelling, releasing, and discharging any liens arising under any security documents to implement, consummate and otherwise effect the Plan and the Plan Documents in accordance

76

with their respective terms, and all such Entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan and the Plan Documents.

### 5. Issuance of New Instruments

157. All instruments to be issued under the Plan (including, without limitation, the New Flintkote Stock) shall upon issuance be duly authorized and validly issued, fully paid, and non-assessable, and any conditions precedent to issuance shall be deemed satisfied.

### 6. Modifications

158. Pursuant to Section 10.9 of the Plan, following substantial consummation of the Plan, (i) Reorganized Flintkote may modify the Plan in order to remedy any defects or omissions or reconcile any inconsistencies in the Plan Documents for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as (a) the interests of the holders of allowed Claims are not adversely affected thereby; (b) any such modifications are non-material; and (c) Imperial, in its reasonable discretion, determines that such modifications would not impair the rights of any Imperial Protected Party; and (ii) Reorganized Flintkote and the Trust shall not support, shall affirmatively oppose, and shall use their best efforts to defeat, any proposed modification or amendment to the Plan that Imperial, in its reasonable discretion, determines might impair the rights of any Imperial Protected Party.

## S. Objections to Confirmation

### 1. Resolution of Certain Prior Objections to Confirmation.

159. Based upon the record of these Chapter 11 Cases, the Bankruptcy Court previously determined that certain of the prior objections to confirmation were resolved by separate agreement and/or orders from this Court. Prior Confirmation Order ¶¶ 107-113.

DOCS_DE:200917.1 28451/001

Specific language to be included in this Confirmation Order pursuant to those resolutions is set

forth below. *See* Plan § 11.4.

### i.    London Market Insurance Companies

160.    Notwithstanding the Stipulation By and Between Plan Proponents and Certain

London Market Insurance Companies (D.I. 5426) (the "LMC Stipulation"), this Confirmation

Order approves the Assignment set forth in the Plan. *See supra*, ¶ 125.

161.    Consistent with the LMC Stipulation, the Bankruptcy Court hereby includes the

following language (with capitalized terms as defined in the LMC Stipulation) in this

Confirmation Order:

> Notwithstanding anything to the contrary in this Confirmation Order (other than
> paragraph 125 of this Confirmation Order) or the Plan, but subject to the provisos
> below, nothing in this Confirmation Order or the Plan (including any other
> provision that purports to be preemptory or supervening), shall in any way operate
> to impair, or have the effect of impairing, the London Companies' legal, equitable
> or contractual rights, if any, in any respect. The rights of the London Companies
> shall be determined under the Asbestos Insurance Policies or Asbestos Insurance
> Settlement Agreements, as applicable, including but not limited to the Wellington
> Agreement. Nothing in Section 11.4.2 of the Plan or anywhere else in this
> Confirmation Order, the Plan, or the Plan Documents shall preclude the entry or
> effectiveness of the Injunctions or shall affect or limit, or be construed as
> affecting or limiting, the protections afforded to the Protected Parties under the
> Injunctions.
>
> Nothing in the Plan, the Trust Distribution Procedures, the other Plan Documents,
> any Confirmation Order, or any other judgment, order, finding of fact, conclusion
> of law, determination or statement (written or verbal, on or off the record) made
> by the Bankruptcy Court or issued or affirmed by the District Court or entered by
> any other court exercising jurisdiction over the Chapter 11 Cases, including in any
> judgment, order, writ or opinion entered on appeal from any of the foregoing,
> shall in any Asbestos Insurance Action: constitute any adjudication, judgment,
> trial, hearing on the merits, finding, conclusion, other determination, or evidence
> or suggestion of any such determination:
>
> > i.    establishing the liability (in the aggregate or otherwise) or
> > coverage obligation of any of the London Companies for any coverage
> > claims, including, inter alia, on the basis of the decision in *UNR*
> > *Industries, Inc. v. Continental Casualty Co.*, 942 F.2d 1101 (7th Cir.
> > 1991);

DOCS_DE:200917.1 28451/001

ii.     establishing the liability or obligation of either of the Debtors or the Trust with respect to any Asbestos Personal Injury Claim or Asbestos Personal Injury Demand, either with respect to each individual entity among the London Companies or all of the London Companies in the aggregate (including, inter alia, whether any of the Debtors or the Trust have suffered an insured loss).

As used in Section 11.4.2 of the Plan, "London Companies" shall consist of Commercial Union Assurance – Norwich Union, ACE European Group Limited (formerly INA UK), RiverStone Insurance (UK) Limited (on its own behalf and as successor in interest to the Drake Insurance Company Limited and Sphere Insurance Company Limited), Indemnity Marine Insurance Company, and Winterthur Swiss Insurance Company.

## ii.    Century Indemnity Company

162.    Consistent with the Settlement Agreement and Release By and Between The

Flintkote Company, Century Indemnity Company, and Other Signatory Insurers (D.I. 1748) Ex.

A (the "Century Settlement Agreement"), the Bankruptcy Court hereby includes the following

language (with capitalized terms as defined in the Century Settlement Agreement) in this

Confirmation Order:

If after the Settling Insurers' payment of the Settlement Amount the Trust is required to respond to discovery served by any Person inquiring about exhaustion of the Insurance Policies or the availability of coverage under the Insurance Policies, the Trust shall respond that (a) all limits of liability of the Insurance Policies have been exhausted, including without limitation all occurrence and aggregate limits, and are no longer available to Flintkote, the Trust, or to any other Person except for the one policy described in Section V.E. of the Century Settlement Agreement, (b) the releases herein are fully effective to extinguish all of the Settling Insurers' obligations under the Insurance Policies to the extent set forth in the Century Settlement Agreement, and (c) any other result would undercut public policies favoring the negotiated resolution of coverage disputes.

DOCS_DE:200917.1 28451/001

### iii.    Liberty Mutual Insurance Company

163.    Consistent with the Settlement Agreement and Release (D.I. 1893) Ex A (as

amended, the "Liberty Mutual Settlement Agreement"), the Bankruptcy Court hereby includes

the following language (with capitalized terms as defined in the Liberty Mutual Settlement

Agreement) in this Confirmation Order:

> No ruling, proceeding, or other matter in connection with the Plan or the Chapter
> 11 cases will impair, affect, or modify the Parties' rights or obligations under the
> Liberty Mutual Settlement Agreement.

### iv.    OIC Run-Off Limited

164.    Consistent with the Settlement Agreement and Release By and Between the

Flintkote Company and Flintkote Mines Limited and OIC Run-Off Limited (D.I. 4451) Ex. 1

(the "OIC Settlement Agreement"), the Bankruptcy Court hereby includes the following

language (with capitalized terms as defined in the OIC Settlement Agreement) in this

Confirmation Order:

> No ruling, proceeding or other matter in connection with the Plan or the
> Bankruptcy Case will impair, affect, or modify the Parties' rights or obligations
> under the OIC Settlement Agreement.

### v.    Mt. McKinley

165.    Consistent with the resolution of the Mt. McKinley Objection (defined in

paragraph 113 of the Prior Confirmation Order), the Bankruptcy Court hereby includes the

following language in this Confirmation Order:

> The reference to the rights of co-insureds in Section 12.3.2(b)(ii) of the Plan is not
> intended to, and does not, apply to insurance policies issued by Mt. McKinley and
> all other Settling Insurers that settled non-"shared" insurance to the extent such
> Settling Insurer's obligations under such policies have previously been or will be
> settled, released and/or compromised pursuant to a Final Order of the Bankruptcy
> Court or District Court approving an Asbestos Insurance Settlement Agreement.

## 2. Overruling of Objections to Confirmation

166. The deadline for objecting to confirmation of the Plan was July 8, 2015, and no substantive objections to confirmation were filed. One pleading filed *pro se* by a prisoner during the solicitation process could be interpreted as an objection to the Plan. *See* Motion to Object, filed by Curtis Downton (D.I. 8831) (the "Downton Filing"). Mr. Downton objected to, among other things, "any and all procedures to the Original Plan, and or any plan that has been established without [Mr. Downton's] knowledge, and or representation in any and all proceedings that pertain to this case." *See* Downton Filing at 1. To the extent that the Downton Filing constituted an objection to the Plan, it is overruled for the reasons set forth in the Confirmation Reply.

167. All objections not otherwise addressed herein or previously withdrawn are hereby OVERRULED in their entirety on the merits.

## T. Retention of Jurisdiction by the Bankruptcy Court

168. The Bankruptcy Court shall retain jurisdiction in these Chapter 11 Cases as set forth in Article XIII of the Plan.

## U. Notice of Effective Date

169. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), Reorganized Flintkote is authorized and directed to serve, within 5 business days after the occurrence of the Effective Date, a notice of the entry of this Confirmation Order (the "Confirmation Notice"). The Confirmation Notice shall include notice of the bar dates established by the Plan and this Confirmation Order, notice of the issuance of the Discharge Injunction, the Third Party Injunction, the Insurance Entity Injunction, and the Supplemental Bar Order and notice of the Effective Date, substantially in the form of Exhibit A attached hereto and incorporated herein by reference, and shall be served on all parties sent actual notice of the Confirmation Hearing,

81

including, without limitation, through their counsel; *provided, however*, that Reorganized Flintkote is authorized and directed to serve the Confirmation Notice directly on those holders of Asbestos Personal Injury Claims that received solicitation packages directly from the Debtors pursuant to the terms of the Solicitation Procedures Order.

170.    As soon as practicable after the entry of this Confirmation Order, the Debtors shall make copies of this Confirmation Order available on the Debtors' bankruptcy website (http://www.flintkotebankruptcy.com).

171.    All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court, shall be paid on the Effective Date or as soon as practicable thereafter.  All post-confirmation and post-Effective Date fees that are due and payable pursuant to section 1930 of title 28 of the United States Code shall be paid by Reorganized Flintkote until the Chapter 11 Cases are closed pursuant to section 350 of the Bankruptcy Code.

## V.    Canadian Order

172.    This Court respectfully requests that the Canadian Court enter an Order within Mines' proceedings (Court File Number 500-11-0243610046) and pursuant to § 18.6 of the Companies' Creditors Arrangement Act recognizing this Confirmation Order in its entirety and ordering this Confirmation Order and the Plan to be implemented and effective in Canada in accordance with their terms.

## W.    Recordation

173.    THIS ORDER IS HEREBY DECLARED TO BE IN RECORDABLE FORM AND SHALL BE ACCEPTED BY ANY RECORDING OFFICER FOR FILING AND RECORDING PURPOSES WITHOUT FURTHER OR ADDITIONAL ORDERS, CERTIFICATIONS OR OTHER SUPPORTING DOCUMENTS.

## X.    Report and Recommendation to District Court

174.    To the extent required under 28 U.S.C. § 157(d), this Court hereby reports to the District Court and recommends that the District Court enter an order issuing and affirming the § 524(g) injunction granted herein.

Dated:    Wilmington, Delaware

Aug 10, 2015

THE HONORABLE MARY F. WALRATH

UNITED STATES BANKRUPTCY JUDGE

DOCS_DE:200917.1 28451/001